# Haney v. Hatfield, Appellant.

*Contracts—Contracts for the sale of land—Breach—Damages—
Construction of contracts—Performance by vendee—Estoppel.*

1. In an action of assumpsit for breach of a contract to sell land where no fraud is present, the damages are to be measured, not by the loss of the vendee's bargain, but only by the consideration paid, and by the expenses and trouble incurred by the vendee.

2. One who places his refusal to perform a contract upon a certain specific ground is estopped, after litigation has begun, to set up other grounds for his refusal.

3. Where in such an action, the contract in question provided that in the settlement, defendant should purchase from plaintiff thirty-nine mortgages "on houses to be built" on lots of a given frontage into which the land was to be divided, the plans and specifications of the houses to be approved by defendant before final settlement, and the defense was that the plans and specifications had never been so approved, and that the mortgages offered at the time of settlement did not comply with the contract in that they did not cover the entire tract, but only thirty-nine subdivisions thereof, leaving two corner lots unencumbered, and that plaintiff had not performed in other matters not alleged at the time of settlement, the court was right in allowing the jury to determine whether the defendant had approved the plans and specifications, as the evidence on this point was conflicting, and in holding that the mortgages complied with the contract, as the lots which they covered were of the required frontage, and the contract did not stipulate that no part of the land should pass unencumbered, and that defendant was estopped to set up matter in excuse for nonperformance which he had not relied on before the action was brought.

Argued March 31, 1913. Appeal, No. 189, Jan. T., 1912, by defendant, from judgment of C. P. No. 1, Philadelphia Co., March T., 1910, No. 4349, on verdict for plaintiff in case of Cornelius Haney v. Henry Reed Hatfield. Before FELL, C. J., POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Assumpsit to recover damages for breach of a contract for the sale of land. Before BREGY, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $40,000, and judgment thereon. Defendant appealed.

*Errors assigned* were various rulings of the trial judge, and various instructions to the jury.

*John C. Bell,* with him *William N. Trinkle, Eli K. Price* and *Charles Biddle,* for appellant.

*John G. Johnson,* with him *J. Quincy Hunsicker* and *George S. Graham,* for appellee.

OPINION BY MR. JUSTICE STEWART, June 27, 1913:

We have here forty-three assignments of error, while the propositions advanced in support of appellant's contention are but two. We shall confine our attention to these latter.

The first is that error was committed in discharging the rule for judgment non obstante; in other words, that the case called for binding instructions for the defendant. The action was for the recovery of damages for alleged breach of contract for the sale and conveyance of land by a vendor. Hatfield, here the appellant, by his duly appointed attorney in fact, entered into a written contract with Haney, the appellee, 10th March, 1910, to sell and convey to the latter a lot of ground at Eighteenth and Hunting Park avenue in the City of Philadelphia for a consideration of $55,000. The purchase was made by Haney with a view to the improvement of the lot by the erection of a number of dwellings thereon. The contract recited that thirty-nine dwellings of a given dimension were to be erected, but stipulated that plans and specifications for the construction of the houses were to be submitted to Hatfield and approved by him before the final settlement and the passing of title. Of the purchase price, $1,000 was to be paid on the execution of the agreement, and the remaining

$54,000 at the passing of title, settlement to be made on or before 1st March, 1910. In this settlement Hatfield was to purchase from Haney thirty-nine mortgages of $4,500 each, "on houses to be built on said lot," the purchase money for these mortgages to be placed by Hatfield with the Real Estate Title Insurance and Trust Company—by subsequent agreement, with the Land Title and Trust Company—at the time of settlement, subject to the conditions of the trust company's policies for the insurance of title of said mortgages and completion of the houses clear of mechanics' liens, and to be drawn out as the work of construction progressed upon vouchers by Haney approved by the trust company and by Hatfield. Whatever other provisions of the contract enter into the controversy will be referred to in appropriate connection. When the parties met for settlement at the appointed time and place there was decided disagreement as to the requirements of the contract, and Hatfield, declining the tender made by Haney, refused to convey. The present action for damages resulted.

On the trial, the plaintiff having alleged in his statement of claim readiness and willingness to perform his part of the contract, submitted testimony to the effect that at the time appointed for settlement he produced and offered to the defendant thirty-nine mortgages each in the sum of $4,500, each encumbering a separate subdivision of the lot to be conveyed by the defendant according to a ground plan which plaintiff had previously submitted, together with plans and specifications of the buildings he proposed to erect, and which had been approved by him. In reply defendant denied that these plans and specifications had been approved by him, and rested his refusal to convey on this and the additional ground that the mortgages offered did not embrace the entire lot he had covenanted to convey, but only thirty-nine subdivisions, leaving two corner lots unencumbered. He further offered to show that the houses plaintiff pro-

posed to build would not meet with the requirements of the contract. While other objections to the sufficiency of plaintiff's tender of full performance were indicated and urged, the defendant nowhere in his testimony says that any of these objections were made by him when the parties met for settlement. Indeed it very clearly appears from the uncontradicted evidence in the case that the defendant then based his refusal to convey solely upon the ground that he had never approved the plan of subdivision, and that the mortgage did not cover the entire tract, but left two lots unencumbered. So far as appears all the other objections urged on the trial related to defects which, if of any material consequence, the plaintiff was entitled to an opportunity to supply. In view of the fact that such variations from the full measure of plaintiff's obligation to perform were then known to the defendant, and he made neither objection nor demand on account thereof, they called for no consideration in the court below, nor do they demand consideration here. "One who places his refusal to perform a contract upon a certain specific ground is estopped, after litigation has begun, to set up other grounds for his refusal." Cyc. Vol. 39, p. 1293. "Just as a purchaser may waive a tender by the vendor, so he may waive objections to the sufficiency of the tender, either by words or by his conduct. Thus, if he make specific objections to the tender, this is a waiver of all others that are of such nature that, if stated by him, they might have been obviated." Id. p. 1549, citing, among other authorities, Tierman v. Roland, 15 Pa. 429.

What was for consideration in the court below was the adequacy of the grounds on which the defendant rested his refusal to convey when the parties met for settlement, and this is what we have for consideration here. First, had the plans and specifications in accordance with which the mortgages were prepared, and in accordance with which the houses were to be built, been previously approved by the defendant? Unquestionably

such approval was a condition precedent, and except as it had been given plaintiff was in no position to demand a conveyance. Whether it had been given was purely a question of fact. The contract prescribed no particular form or manner in which approval was to be expressed Therefore the oral evidence which plaintiff offered to show previous approval was entirely competent and was properly admitted. There was conflict of testimony on this point, and the question was submitted to the jury with a very full and impartial review of all the testimony on both sides by the learned trial judge, resulting in a finding in favor of plaintiff's contention. With respect to this feature of the case the record discloses no error.

Second: did the mortgages tendered the defendant meet the requirements of the contract? Collectively they embraced the entire lot that defendant covenanted to convey excepting two corner lots in the subdivision of the whole as made by the plaintiff. Defendant contends that the mortgages were to embrace these two lots as well; in other words, that he was entitled to be secured on the entire lot he was conveying for his unpaid purchase money. The question lies fairly within the one we have just considered. The ground plan which, as found by the jury, plaintiff submitted to the defendant and was by him approved, shows a subdivision into forty-one lots. The contract provided as follows: "It is further agreed that the said party of the first part (Hatfield) agrees to purchase thirty-nine mortgages at forty-five hundred dollars ($4,500) each, for three or five years at five and four-tenths per cent., on houses to be built on said lot, each having a frontage of not less than sixteen feet. Said houses to be not less than ten rooms and bath each. Plans and specifications for the construction of such houses to be submitted to the party of the first part and approved by him before the final settlement and passing of title." It is not contended that any of the lots mortgaged have less than sixteen

feet. frontage, the only defined measurement expressed in the contract; nor is objection made to their insufficiency in other regard. Therefore, if the ground plan submitted to the defendant and approved by him discloses the fact that as subdivided the plan showed forty-one lots, with thirty-nine of them meeting the requirements of the contract, as it most certainly does, the only inference to be drawn must be that the parties had a common understanding of what the contract requirements were, and that in this respect they had been fully met. Aside from this, however, the contract is free from all ambiguity. It does not stipulate either in express terms or by necessary implication that no part of the lot is to pass to the vendee unencumbered, but provides that the vendee is to accept thirty-nine mortgages each resting on a subdivision of a prescribed frontage. His refusal to accept these left him without excuse for the breach of his contract. Up to this point we find no error in the record, and the assignments of error relating to this branch of the case are overruled.

There remains for consideration the question of damages. As we have said this was a contract for the sale of land. Notwithstanding the contract is somewhat involved, whatever unusual provisions it contains relate to the consideration, how that was to be met, and how paid. The whole transaction was based on a contemplated sale and conveyance of land, and it is from this fact that the true measure of damages for the breach is to be derived. The defendant covenanted to sell and convey to the plaintiff a certain described lot of ground; he refused to keep his covenant in this regard and the action was for damages for a breach for which he showed neither excuse nor justification. In this particular inquiry we have nothing to do with any collateral undertakings by either party, these were but incidental to the covenant with respect to the land. We have multiplied assignments of error on this branch of the case, but they may all be reduced to this one com-

plaint, that under instructions from the court the jury were permitted to return a verdict which in their estimation, having regard to the evidence, would compensate the plaintiff for the loss of his bargain. That such were the instructions the jury received admits of no question. In his charge, the learned trial judge expressly submits this question: "What could Haney have made if he had gone on with his contract?" He repeats the instruction, and after directing the attention of the jury to the evidence introduced with respect to the gain that plaintiff would have made had there been no breach, he directs in these words: "Now you will have to look at this as common sense men; you are not obliged to take the say so of any particular man about what was lost, but taking it altogether make up your minds as to what it was that Mr. Haney lost by reason of Mr. Hatfield's failure to live up to his agreement ......and that amount is the amount of the verdict that should go to Mr. Haney, if you believe the plans and specifications were approved as I have indicated." Points expressing this same measure of damage were submitted by the plaintiff and affirmed; while points expressing a different measure were submitted by the defendant and refused. The specific assignments on this branch are too numerous to be considered separately. The instructions here complained of constitute clear error, and it follows that it was error to admit evidence to establish any such loss. The rule with respect to measure of damages in cases of real contracts is thus laid down in Dumars v. Miller, 34 Pa. 319: "That a vendor who, without fraud, is unable to convey the title to real estate, which he agreed to convey, is subject to a measure of damages that regards the consideration paid, or where it has not been paid, the expenses and trouble incurred by the vendee, has always been the rule in Pennsylvania, may be seen by consulting the authorities cited in Malaun v. Ammon, 1 Grant's Cas. 136-7, and in Hertzog v. Hertzog, above mentioned. The

value of the land is sometimes spoken of as the measure of damages, but that means the value, as measured by the consideration, rather than the difference between the consideration and what the land will fetch in the market. The parties fix their own estimate of the value, when they fix the consideration. If there be eviction, or failure to convey, after that consideration has been paid, it shall be returned with interest—if it have not been paid, the expenses incurred are to be reimbursed. The vendor is to restore the vendee to the condition in which he found him, but he is not bound to compensate him for the value of the bargain.......That is the source of our doctrine as to the measure of damages for breach of real contracts, where there has been no fraud. It is not the rule that applies to chattel contracts, but it is the rule where the action is brought on covenants and contracts for land, whether they be executed or executory covenants and contracts." The cases following the one above cited are uniform in their recognition of the rule there stated. The qualification in the rule confining its application to cases where fraud is not an element, is without significance here. The evidence affords no warrant for even a suspicion of fraud in the making of the contract, and the breach can be referred to nothing but a mistaken view of the obligations imposed. The distinction made between chattel contracts and contracts real was in the present case overlooked, as appears from the effort here made to support defendant's contention by citing the case of Williams v. Philadelphia, 208 Pa. 282. The radical difference between the contract in that case and the present one very appropriately illustrates the distinction made in the opinion from which we have quoted. It is quite enough to say that the contract for the breach of which damages were there sought was not a contract for the sale of land.

Applying the well established rule to the facts of this case the plaintiff was entitled to recover back the money

he paid and to be reimbursed for the expenses he had incurred, and to these items his right to recover should have been limited.

The assignments of error which relate to the measure of damages adopted by the court must be sustained.

The judgment is reversed and a venire de novo is awarded.