## LONG et al. v. MARTIN. (No. 1762.)

(Court of Civil Appeals of Texas. Amarillo. May 25, 1921. Rehearing Denied Oct. 12, 1921.)

**1. Depositaries ⟨=11—Of liquidated damages properly made party to action therefor.**

In action by seller of oil lease for money deposited by purchaser in bank as liquidated damages to insure performance of contract, the bank was properly made a party to the action.

**2. Venue ⟨=7—Action against purchaser and bank with which purchaser had deposited liquidated damages held properly brought in county in which bank was situated.**

Where contract for sale of oil lease provided for deposit in a bank of a certain sum of money at specified times, as liquidated damages to insure performance by purchaser, vendor's action against purchaser and bank was properly brought in county in which the bank was situated, since contract was to be performed in such county.

**3. Contracts ⟨=94(8) — "Fraudulent concealment" defined.**

Fraudulent concealment justifying a rescission of a contract is the intentional concealment of some fact known to the party charged, which is material for the party injured to know to prevent being defrauded the concealment of a fact which one is bound to disclose being the equivalent of an indirect representation that such fact does not exist.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fraudulent Concealment.]

**4. Contracts ⟨=94(8)—When failure to make disclosure is not fraud.**

Where persons deal with each other at arm's length, and no direct inquiries are made, and false sources of information are equally open to both, there is no duty of disclosure, resting on either party so as to give a right to avoid the contract for fraud.

**5. Mines and minerals ⟨=74—Vendor's failure to inform purchaser of oil lease of existence of dry hole held not fraudulent concealment.**

Where purchaser signed contract to purchase oil lease without inquiring of vendor as to whether there were dry holes in the surrounding territory, and vendor did not know but that the purchaser had inspected the land and was familiar therewith, and where the land was open to purchaser's inspection and view, vendor's failure to inform purchaser of existence of dry hole on land near that covered by the lease was not a fraudulent concealment.

**6. Mines and minerals ⟨=74—Vendor's statement as to well on nearby land being spoiled as a producer held not fraudulent representation.**

Where vendor of oil lease had ground for believing that oil had been found in well on land near that covered by oil lease, and that it had been spoiled as a producer, his statement to purchaser after contract to sell the oil lease had been entered into that the well had been junked and the flow of oil stopped to deceive the public held not a fraudulent representation.

**7. Vendor and purchaser ⟨=144(1) — Vendor need not be in position to perform at time contract is entered into.**

Generally, when a contract is entered into in good faith, it is not necessary that the vendor be actually in a situation to perform it at the time it is entered into, provided he is able at the proper time to place himself in a position to perform.

**8. Frauds, statute of ⟨=117—Written contract not void though placed in escrow.**

A written contract for the sale of an oil lease is not void under the statute of frauds though deposited in escrow.

**9. Mines and minerals ⟨=74—Contract for sale of oil lease held not unilateral.**

A contract for the sale of an oil lease was not rendered unilateral by provision requiring the return to purchaser of a deposit made to insure performance in the event of vendor's failure to cure any defects in the title, where vendor had obligated himself to present a good title.

**10. Contracts ⟨=10(1)—Not void for want of mutuality, if both parties undertake to do something.**

Generally, there is mutuality of obligation where both parties undertake to do something, it being unnecessary that the obligation of one party is met by an equivalent counter obligation of the other.

**11. Mines and minerals ⟨=74—Description of land in contract for sale of lease held sufficient.**

Description of land in contract for sale of oil lease as "being the south ten acres out of thirty acres in the northeast corner of survey No. 62, Red River valley lands in Wichita county, Texas," held sufficient though the land should have been designated as being in block 62, instead of "survey 62," since the land could be identified by a map used by the parties in their negotiations wherein they referred to this tract and other blocks in the neighborhood as a block or survey interchangeably.

⟨=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**12. Deeds ☞38(I)—Rule as to sufficiency of description stated.**

Generally, the description of premises conveyed must be sufficiently definite and certain to enable the land to be identified, but the description need not be by boundaries, corners, or distance, or by reference to monuments, but may be general, if with the aid of parol evidence the land intended to be conveyed can be located.

**13. Mines and minerals ☞74—Contract requiring vendor in contract for sale of lease to furnish abstract and cure defects pointed out construed.**

Under contract for sale of oil lease, requiring vendor to furnish an abstract within a certain period and give the purchaser a certain period after delivery of abstract to examine it "and report any requirements made by the attorneys of parties of the second part [the purchasers], and any time required for completing the title according to said requirements shall not be deducted from the time above mentioned," the vendor was not required to furnish, in the first instance, an abstract satisfactory to the purchasers' attorneys, or to have instruments obtained pursuant to purchasers' objections abstracted and certified by duly appointed abstractor, but fully performed the contract where purchasers made no further objections after vendor had taken steps to cure the defects pointed out in the first instance.

**14. Mines and minerals ☞74—Vendor's acceptance of purchasers' renunciation of contract to purchase lease relieved him from further performance.**

When purchasers declared their renunciation of a contract to purchase oil lease, vendor was authorized to accept their renunciation, and was relieved from a further performance on his part.

**15. Damages ☞81—Provision in contract for sale of oil lease held to provide for liquidated damages, and not penalty.**

Provision of contract for sale of oil lease, requiring purchasers to deposit an amount to be forfeited in case of nonperformance, *held* a provision for liquidated damages, and not a penalty, in view of the uncertainty of the discovery of oil in paying quantities, notwithstanding the failure of the parties during negotiations to discuss such matters.

Error from District Court, Wichita County; Edgar Scurry, Judge.

Suit by M. E. Martin against H. A. Long and another. Judgment for plaintiff, and defendants bring error. Affirmed.

W. L. Eason, of Waco, and Bullington, Boone, Humphrey & Hoffman, of Wichita Falls, for plaintiffs in error.

Fitzgerald & Hatchitt, of Wichita Falls, for defendant in error.

HUFF, C. J. Defendant in error, Martin, sued plaintiffs in error H. A. Long, W. H. McCullough, and the City National Bank of Wichita Falls, in the district court of Wichita county, to recover liquidated damages for an alleged breach of a certain contract for the sale of an oil lease on 10 acres of land, alleged to be out of a 30-acre tract in survey No. 62 in that county. We shall refer to the parties on this appeal, plaintiff in error as plaintiff, and defendant in error as defendant. The plaintiffs answered by general and special exceptions, general denial, and specially answering, among other things, that the contract was induced by false and fraudulent representations and concealments, in that the agent of defendant, one C. C. Shumway, represented that there was no dry hole on the 30-acre tract, and no dry hole had been drilled in the vicinity of the 30-acre tract of land; that the representations were false and untrue. A dry hole had been drilled previous to the date of the contract, of which defendant was well aware. Relying upon such representations, plaintiffs executed the contract, and gave the first check for $7,000, but for such representations and plaintiffs' reliance thereon they would not have executed the contract or check. It is also alleged, in effect, after paying the $7,000, plaintiffs acquired some information relative to a well having been drilled on the 30 acres; that they sought defendant and his agent for the correct information and to ascertain if a well had been drilled and if it was a dry hole; that if it was so they would not carry out the contract, but would demand a return of the $7,000 paid. The defendant and his agent admitted a well had been drilled, but represented it was not a dry hole, and informed plaintiff that the persons who had so informed them were unreliable, and, instead of being a dry hole, it was a good producing oil well, and that it had been "junked," meaning thereby the flow of oil had been stopped for the purpose of deceiving the public; that the well had established that the land was in a proven territory, which plaintiffs believed and relied upon, and were induced thereby to deposit the second check for $7,000; that the representations were false, and that before the three checks provided for in the contract were deposited plaintiffs discovered that they had been imposed upon and the representations were wholly false, and they demanded the return of the two checks deposited, each for $7,000. They also alleged that they were unacquainted with the location of the well, and had never been upon the land at the time of executing the contract and checks. There are other pleadings, which at this time we will not set out, but will notice such of them as shall be necessary in disposing of the various assignments. The case was tried before the trial court without a jury, and he filed findings of fact and conclusions of law. The contract declared upon is as follows:

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"State of Texas, County of Wichita.

"(1) This contract this day made and entered into by and between M. E. Martin of the county of Dallas, state of Texas, party of the first part, and H. A. Long and W. H. McCullough of the county of McLennan, state of Texas, party of the second part, witnesseth:

"(2) Party of the first part agrees to sell and party of the second part agrees to purchase, the oil and gas lease on the following described lands, situated in Wichita county, Texas, to wit:

"(3) Being the south ten acres out of thirty acres in the northeast corner of survey No. 62, Red River valley lands, in Wichita county, Texas, at and for the price and sum of $21,000 to be paid as follows:

"(4) $7,000 cash; to be deposited with this contract and to be held in escrow by the City National Bank of Wichita Falls, Texas; $7,-000 to be deposited ten days after date hereof and held in escrow; and the balance of $7,000 to be paid within twenty days from date hereof, provided the abstract of title shall be approved by the attorney of parties of the second part, showing a good and merchantable oil and gas lease on the above-described land.

"(5) Party of the first part agrees to furnish parties of the second part an abstract within ten days from date hereof, or sooner if same can be obtained from the owners of said lands. Parties of the second part shall, within five days after the delivery of said abstract, have same examined, and report any requirements made by the attorneys of parties of the second part, and any time required for completing the title according to said requirements shall not be deducted from the time above mentioned.

"(6) In case the title cannot be cured to show a good and merchantable title in the oil and gas lease, or the said above-described lands, then the deposit as made by the parties of the second part shall be returned to the parties of the second part. Should parties of the second part fail or refuse to carry out this part of this contract and fail and refuse to make payment as hereinabove specified, then the amount so held in escrow and all amounts paid under this contract shall be delivered to the party of the first part, and retained by him as liquidated damages.

"(7) Party of the first part shall within the time limit herein mentioned execute a good and valid assignment of the oil and gas lease on the property herein described and attach same to said contract in escrow and when all of the terms herein mentioned are complied with and the payments herein specified are made, the City National Bank of Wichita Falls is hereby instructed to deliver said assignment of oil and gas lease to the parties of the second part.

"Witness our signatures this the 10th day of February, A. D. 1919. [Signed by the parties]."

We shall not at this time set out the facts necessary to a disposition of the assignments, but will, under each of the assignments considered by us, state sufficient of the facts as shown by the record as are relevant to the assignments.

[1, 2] We will consider first the thirty-fourth assignment, assailing the action of the trial court in sustaining the defendant's contest of the plaintiffs' plea of privilege to be sued in the county of their residence, McLennan county. The contract, we think, shows that it was to be performed in Wichita county. The City National Bank of Wichita Falls had its place of business in that county, and it was the holder of the funds in controversy. The checks were made payable to the order of the bank at Wichita Falls, and all the papers were held by it in escrow. The bank, we think, was a proper party. We agree with the trial court that the venue was properly in Wichita county, and we have recently so held in a case presenting this issue. Gambrell v. Tatum, 228 S. W. 287.

The first, second, and third assignments will be considered together. The first assails the court's finding that Martin and his agent, Shumway, did not conceal from plaintiff the fact that a well had been drilled in the northeast corner of the 30-acre tract, out of which the 10 acres were sold. The second assails the finding of fact that defendant in error's representations to plaintiffs of and concerning the well was merely an opinion and rumor, and was not such representation as would form the basis of fraud, as pleaded by plaintiffs in error, and, further, that plaintiffs were estopped from claiming any relief by reason of any statement of Dr. H. A. Long, by M. E. Martin, or Shumway, concerning the well, because they accepted the contract and paid the second $7,000 after knowing all the facts and without protest; third, that the court was not supported in his finding that plaintiffs did not rely upon any statement made by the defendant or his agent, relative to the well. The evidence shows the well referred to was about a quarter of a mile north of the north line of the 10-acre tract. Shumway was authorized by defendant to find a purchaser for this 10 acres, and to sell the land for $2,000 per acre, and to receive all over that amount for his services. The plaintiffs, Long and McCullough, resided in Waco, Tex., as did Shumway. Dr. Long, on the 10th day of February, 1919, visited Wichita Falls, it appears, with the view of making investments for himself and McCullough. He was acquainted with Shumway in Waco, who appears however, to have been more intimately acquainted with McCullough. According to Martin, some few minutes before Shumway brought Long to him he and Shumway made the contract of agency to sell 10 acres. Shumway told Long of the land and what it could be bought for and recommended it as a good buy. Long admitted he understood the statement that it was a "good buy" to be mere trade talk. The agent then took Long to Martin, who was at his hotel, and introduced Long as the purchaser of the 10 acres. The contract was then drawn, signed and placed

in escrow without anything being asked or said about the well on the 30 acres or any other. Nothing was said about it between the parties.

After signing up the contract it seems Long and Martin bought maps. These maps had a mark indicating there was a dry hole in the northeast corner of the 30 acres, which was shown to be about a quarter of a mile north of the north line of the 10 acres. Martin erased the mark on the map. He and Long differ as to the occasion for doing so. Martin claims that Long requested it upon the suggestion that the land would sell better with it off. After this, and before noon, he met a Mr. Ware, who told him there was a dry hole on the 30 acres. Long claims Ware showed him the erasures; that he then went to see Shumway about it. Shumway said that he knew nothing of that well and then stated he knew of no dry holes closer than 1½ miles either on 72 or 74. Long testifies that Shumway told him this before making or entering into the contract; Shumway says afterwards. In the evening of that day Long went to see Martin, and Martin, so he testifies, told Long a well had been put down on the 30 acres, and that the parties who put it down claimed there was oil found in it, but the well had been "junked," but this he did not think condemned the land, but if Long wanted to dispose of it he could get him a profit on it. Long said he would keep it. Shumway says Long returned to him and reported what Martin had said with reference to selling for a profit, but that he (Long) would keep it; that Long had a map showing a dry well on the 30 acres, but that the map Shumway had did not show the dry well. The evidence shows this all occurred on the 10th of February. On the 20th day of February, Long placed in the bank the second $7,000 called for in the contract. On the 24th day of February Martin furnished an abstract to Long's attorney, who examined it and made some objections in writing. The abstract, with the objections, Long returned to Martin with a letter, saying nothing of any claimed deception, but on the 27th of February, he and McCullough wrote a letter to Martin from Waco, renouncing the contract on the grounds, as stated, of misrepresentations and concealments. The defendant proved by Judge Moore, president of the Godley Oil & Gas Company, and who had the well put down, that they reached an oil sand and found oil in it; that they tasted it and it tasted like kerosene, and that they decided it was an oil well. From his testimony, it seems that he thought in cementing it they had cut off the oil, or, as he termed it, "junked" the well. We gather from his testimony that the well, in his opinion, was spoiled in its management. That company went to further expense to develop the well, but the driller testifies he found no oil in it, but in going deeper struck salt water. The trial

court substantially found as set out in the assignments as above summarized.

[3, 4] Fraudulent concealment is the intentional concealment of some fact known to the party charged, which is material for the party injured to know, to prevent being defrauded. The concealment of a fact which one is bound to disclose, being the equivalent of an indirect representation that such fact does not exist, and differing from a direct false statement only in the mode in which it is made. 1 Black on Rescission and Cancellation, § 58.

"To justify the rescission of a contract on the ground of fraudulent concealment, there must have been a willful suppression of such fact in regard to the subject-matter as the party making it is bound to disclose." Id. § 59.

"Where persons deal with each other at arm's length—that is to say where there is no relation of trust or confidence between them, but each is supposed to be on his guard against the other—and no direct inquiries are made and all the sources of information are equally open to both, so that each can, if he will, possess himself of all the knowledge possessed by the other, then there is no duty of disclosure resting on either party, and if one knows circumstances affecting the matter in hand, of which the other is ignorant, it is an advantage of which he may legitimately avail himself so that his mere silence or failure to volunteer information is not fraudulent, either actually or constructively. For the concealment 'which the law denounces as fraudulent implies a purpose or design to hide facts which the other party ought in justice to know, and mere silence is not in itself concealment.'" Id. § 60.

Where the seller says nothing at all, and is asked no questions, and is not legally bound to volunteer information, silence is not concealment.

"In such circumstances common sense, as well as common law, requires the buyer to exercise and act on his own judgment. If no active concealment is practiced by the seller in order to deceive, the buyer cannot allege fraud where he inspects what he purchased and the defect is apparent, or where the thing purchased was open to his inspection so that he could have ascertained the defects by the exercise of ordinary care and prudence." Id. § 61.

[5] In this case Long hardly gave Martin time to draw the contract, much less reveal to him the dry holes in the surrounding territory. Martin only accepted his proposition, drew the contract, signed it and placed it in escrow. We see no conditions before signing the contract demanding Martin to reveal the well on the 30 acres. If Shumway tells the truth, he knew nothing to reveal as to the well. Under the circumstances of this particular case, we think the trial court is sustained by the evidence in finding that neither Martin nor Shumway were guilty of willful suppression of such fact, which they were bound to disclose in regard to the land as would amount to fraudulent concealment.

They were only silent. They had the right to expect Long to act on his own judgment. The land and the surrounding territory was open to his inspection and view. In addition to the above, Martin testified that he did not know whether Long had been on the property or not at the time of entering into the contract. Simpson on Equity, § 538.

[6] It is insisted that there was false representation, first by Shumway, that there were no dry holes closer than 72 and 74. Long and Shumway do not agree upon this matter. This, of course, was for the court. Long and Martin disagree as to what Martin told him as to the well being a dry hole. There are facts which warrant the court in accepting Martin's statement, and also that his statement was not false in the sense that it was fraudulent. The facts show he had grounds for believing oil had been found in the well, and that it had been spoiled as a producer. It is true, as asserted by plaintiffs, that the representation need not have been willfully made if it was untrue and material, where he had full opportunity to know its falsity. This well was not on Martin's land, but on adjoining land. It is not shown he had full opportunity to know that the claim of oil in the well was untrue. He had no more right on the land, nor was charged with any greater duty to ascertain its true condition, than Long. These representations were made after the contract had been entered into. It is sought to show that the maps for sale to the parties had a dry well marked on them. These maps were accessible to Long. He traded, it seems, with his eyes closed, when he at least was charged with ordinary prudence to look to his own interest. After he contracted for this land and before he paid the second $7,000, his friends told him there was a dry hole thereon and this is| shown by his own admission, and Shumway says he had a map showing that fact, and he requested Martin, so Martin testifies, that his map have the marks erased thereon. Martin offered to get his money back for him, but he decided to keep the land, so both Shumway and Martin testified. We think the court's findings of fact are supported, and we do not think we could say as a matter of law that Martin fraudulently concealed the condition of the well on the 30-acre tract, or made misrepresentations with reference thereto.

The fourth to tenth assignments will be considered together. Thereunder complaint is made of the judgment of the court that the contract entered into was a legal and binding one, and that plaintiffs breached their contract without legal cause. From the propositions we infer that plaintiffs' position is that the defendant did not have an assignment to the 10 acres when he entered into the contract, and that he could not legally contract to convey it, and, further, as the contract was to convey an interest in land it was required to be in writing, and as it was up in escrow this did not satisfy the statutes of fraud. The Godley Oil & Gas Company seems to have owned the lease on the 30 acres and before the contract in question had entered into a written contract with Martin to sell the lease on the 10 acres of land. The assignment to Martin from that company is dated the 25th day of February. Before that time Martin had up $5,000 on his contract with the Godley Oil & Gas Company, and he finished paying for the 10 acres on the 28th, but received notice of the renunciation of the contract by plaintiffs February 27th.

[7] As we understand:

"The general rule is that when a contract is entered into in good faith it is not necessary that the vendor be actually in the situation to perform it at the time it is entered into, provided he be able at the proper time to place himself in that situation." Armstrong v. Palmer, 218 S. W. 631; Hollifield v. Landrum, 31 Tex. Civ. App. 187, 71 S. W. 983, column 1; Townsend v. Goodfellow, 40 Minn. 312, 41 N. W. 1056, 3 L. R. A. 739, 12 Am. St. Rep. 763.

[8] The plaintiffs assert they had a legal right to withdraw from the contract, as it was deposited in escrow, and that it was not a binding contract because of the statute of frauds. It may be no title, either legal or equitable, vested until the performance of the condition upon which it was deposited had been performed, but the contract was in writing, giving the terms and conditions, and satisfied the statute. The plaintiff cites the case of Blue v. Conner, 219 S. W. 533, decided by this court, as sustaining the proposition. This it does not do. In that case a lease was deposited in escrow with itself evidenced an executed contract. Resort to parol testimony was necessary in that case to establish the conditions upon which it was deposited. The court called attention that even in that character of case the authorities were in conflict, but we followed what we thought to be the holding in Simpson v. Green, 212 S. W. 263, and the line of decisions there indicated. Those cases are not authority where the conditions of the contract are in writing and in escrow on the proposition that the statute will render the agreement void or that one may refuse to perform for that reason. The only burden placed by the escrow is that before a party may recover on a contract in escrow he must show he has performed the conditions, or offered to do so, and was prevented therefrom, without his fault. Sykes v. Fischl, 212 S. W. 217; Schmidt v. Deegan, 69 Wis. 300, 34 N. W. 83; Wilkins v. Somerville, 80 Vt. 48, 66 Atl. 893, 11 L. R. A. (N. S.) 1183, 130 Am. St. Rep. 906.

[9, 10] The plaintiff also contends the stipulation designated by us as clause 6 is unilateral and therefore nonenforceable. It is insisted that the stipulation, "in case the title cannot be cured," the deposit should be re-

turned to plaintiff, renders the contract unilateral. It is insisted that defendant was under no obligation to cure the title, and plaintiff could not have enforced the contract. The defendant obligated himself to present a good title. It was a binding obligation which could have been enforced. He could not have arbitrarily refused to do so; it did not rest upon his will alone. A breach of this obligation would have subjected him to damages therefor. Generally there is mutuality of obligation where both parties undertake to do something. A contract does not lack mutuality merely because one party is not met by an equivalent counter obligation of the other. The duty was upon the defendant to furnish a title within the time specified and assign to plaintiff the oil lease on the land. This, we think, such an obligation as he could not refuse to perform, and the fact that at that time he only had a contract to purchase from the vendor did not relieve him of his obligation to plaintiff to do as he agreed to do. Texas Seed, etc., v. Chicago Set, etc., 187 S. W. 747.

[11] Assignments 11 to 27, inclusive, assail the action of the trial court in overruling the exceptions to the petition and supplemental petition, in which the description of the land is contained, as set out in the contract, and in alleging mutual mistake in writing in the contract survey 62 instead of block 62, and to the judgment of the trial court in finding the land sufficiently described, or, in other words, failing to find that the contract was invalid for want of a sufficient description of the land. We shall not set out the assignments as made, but will endeavor to dispose of them by discussing the description, the evidence, and the trial court's judgment. The contract describes the land to be assigned as "being the south ten acres out of thirty acres in the northeast corner of survey No. 62, Red River Valley Lands, in Wichita county, Texas." The contract agreed to was one to sell and the other to purchase an oil and gas lease on the land. The defendant, within the time limit, was to execute a good and valid assignment of the oil and gas lease on the property described, "and attach same to said contract in escrow, and when all the terms herein mentioned are complied with, and the payments herein specified are made, the City National Bank of Wichita Falls is hereby instructed to deliver said assignment of oil and gas to the parties of the second part." The assignment gives the field notes of the 10 acres, and the trial court finds as a fact the land therein described is the same mentioned in the contract. The court finds it was a mutual mistake of the parties in the use of the word "survey" instead of "block." The parties, in testifying, the statement of facts shows, referred to the maps, none of which are in the record. They referred to all the surveys or blocks by their number. It is inferable from the entire record that the sup-

posed oil territory was surveyed into blocks, and was mapped for convenience in sale, and sales were made with reference to the maps and numbers. Wells were marked on the map as either producing or dry by certain marks indicating one or the other. The parties to this suit, in their negotiations, used maps, which is shown by all the witnesses had mapped survey or block 62; also the 30 acres in that block and the 10 acres out of the 30 acres, and negotiated with reference thereto. It is shown in the negotiations block 62 was referred to on the map; that this tract and all the many blocks in that neighborhood were referred to as either a survey or block interchangeably. It is clearly shown, we think, 62 was referred to whether it be designated a block or survey. The assignment was executed and attached to the contract in escrow within the time limit, but it would appear that this was done after plaintiffs' renunciation of the contract.

[12] It is recognized in this state, and generally, that the premises conveyed must be sufficiently definite and certain to enable the land to be indentified.

"It is not essential to the validity of a deed that the description should be by boundaries, corners, or distance or by reference to monuments. If the description is general the particular subject-matter to which the description applies may be ascertained by parol evidence, and the deed will not be held void for uncertainty if with the aid of such evidence the land intended to be conveyed can be located. * * * The court will not resort to arbitrary rules of construction if without so doing the intention of the parties can be ascertained. The deed and its descriptive calls will be construed as any contract would be. When a doubtful description is to be construed, the court should endeavor to assume the position of the parties, the circumstances of the transaction should be carefully considered, and in the light of these circumstances the words should be read and interpreted." 2 Devl. on Real Estate, § 1012 (2d Ed.)

Though the description in the agreement does not indicate the boundaries of the land, if it is sufficient to fit and comprehend the property it is a compliance with the statute of frauds, and resort may be had to extrinsic evidence to ascertain the boundaries or otherwise fix its identity and apply the description to the very property intended, provided it does not dispute or add to the agreement. Brown, Statute of Frauds, § 385; 20 Cyc, 270 (b); Ryan v. U. S., 136 U. S. 68, 10 Sup. Ct. 913, 34 L. Ed. 447; Blake v. Doherty, 5 Wheat. 359, 5 L. Ed. 109; Barry v. Coombe, 1 Pet. 640, 7 L. Ed. 295; Eggleston v. Wagner, 46 Mich. 610, 10 N. W. 37; Prebble v. Abrahams, 88 Cal. 245, 26 Pac. 99, 22 Am. St. Rep. 301. That is certain which can be rendered certain. If the contract furnishes the means of identifying the land it will not be held void as a matter of law, where extrinsic ev-

idence will not contradict its provisions as to the description. Identity should be left to be established as any other fact. These general principles have been frequently discussed by our courts. Wilson v. Smith, 50 Tex. 365; Taflinder v. Merrell, 95 Tex. 95, 65 S. W. 177, 93 Am. St. Rep. 814; Slaughter v. Dallas, 101 Tex. 315, 107 S. W. 48; Eustis v. City of Henrietta, 90 Tex. 468, 39 S. W. 567; Brown v. Chambers, 63 Tex. 131; Ragsdale v. Robinson, 48 Tex. 379; Pearson v. Sanger, 93 Tex. 160, 53 S. W. 1012; Hermann v. Likens, 90 Tex. 448, 39 S. W. 282; Beaton v. Fussell, 166 S. W. 458; Spaulding v. Smith, 169 S. W. 627; Fortenberry v. Cruse, 199 S. W. 523; Stroburg v. Walsh, 203 S. W. 391; Hopkins v. Walters, 224 S. W. 516 (6). We think it is sufficient to refer to a section, survey, or block number and the parts thereof proposed to be sold. This is generally regarded as a sufficient designation. See authorities above cited, and Ryan v. U. S., 136 U. S. 68, 10 Sup. Ct. 913, 34 L. Ed. 447, and see illustrations given; 2 Devl. on Real Estate, §§ 1012, 1013, 1013a. So we take it survey or block 62, Red River Valley lands in Wichita county, sufficiently designated the block out of which the 10 acres was to be surveyed. It gives the data for locating the block or survey. "The south ten acres out of thirty acres in the northeast corner" of the block we also think gives sufficient data. The 10 acres may be easily ascertained upon locating the 30 acres. Lunn v. Scarborough, 6 Tex. Civ. App. 15, 24 S. W. 846, and authorities, supra. "Thirty acres in the northeast corner" plaintiff contends cannot be determined because it is not shown whether it is in a square, rectangle, triangle, or polygon. The location of the 30 acres is based on the northeast corner of 62. To find it search must be made in the northeast corner. There can be but one 30 acres in that corner. It must be bounded by the north and east lines of block 62, and it must occupy the space in that corner, as no other can occupy the same space. This designation does not give the boundaries, but certainly gives the data by which it can be found, and if the extrinsic evidence shows it to correspond to the land which it is alleged to have been contracted to be sold, the contract is not void. If plaintiffs were trying to enforce the deed, we apprehend the court would construe the deed to call for a square if the confirmation of 62 required that form.

"In Ohio it has been held that a description of land as 'seventy acres lying and being in the S. W. corner' of a certain section is sufficiently defined, and that the land conveyed will lie in a square." 2 Devl. on Real Est. § 1013, p. 1921. Walsh v. Ringer, 2 Ohio, 327, 15 Am. Dec. 555.

The court in that case said:

"The defendant contends that this description is so vague and uncertain as for that reason to be void and inoperative. On the other hand, the plaintiff contends it is a good description to convey 70 acres of land, commencing in the southwest corner, and extending on the west line * * * in an oblong square. Neither of these constructions can be maintained. The general position of the land * * * is given with sufficient certainty. It is in the southwest corner. According to the rules of decision, both in this state and in Kentucky that corner is a base point from which two sides of the land conveyed shall extend an equal distance, so as to include by parallel lines the quantity conveyed. From this point the section lines extends north and east so as to fix the boundary west and south, the east and north boundaries only are to be established by construction, and the rule referred to gives them with sufficient certainty."

We quote from that case again, as bearing on the 10 acres:

"Had the description been 'seventy acres on the west side of the quarter' the whole west line must have been considered the base line of the tract, and the quantity laid out in an oblong square."

The Court of Civil Appeals, for the Second District, speaking through Judge Stevens, in Day v. Needham, 2 Tex. Civ. App. 680, 22 S. W. 103, announced the same rule, that is where it can be taken in a square, but from the face of the deed it should be taken in another form—oblong—then the obvious intention should be followed. The contour of that survey indicated the latter was the obvious intention of the grantor in the deed. The description afforded by the deed, it was held, without the aid of extrinsic evidence, the land conveyed could be found and identified with reasonable certainty. So we take it in this case the 30 acres will conform to block 62. As to whether it should be an oblong or a square, but the quantity was located in the corner, and whatever its form, the south 10 acres was to be conveyed. The data was given by which both the 30 acres and the 10 acres tract could be identified.

We are inclined to think that the agreement to attach the assignment to the contract in escrow, to be delivered upon the consummation of the trade, is proper to be looked to, and may be for the description of the land and the fulfillment of the agreement. The trial court finds the description in the assignments was the same property mentioned in the contract, and that the assignment was a part of the contract. This finding seems to have support in the evidence. Ryan v. U. S., 136 U. S. 68, 10 Sup. Ct. 913, 34 L. Ed. at pages 452–454, and the cited cases therein of Jenkins v. Harrison, 66 Ala. 345.

The trial court was also justified in finding it was the mutual mistake of the parties in designating 62 a survey instead of a block. There was no reversible error in

overruling exceptions to the supplemental petition, setting up that fact. We see no injury resulting in calling it one thing or the other. We will not presume there was another survey or block in the Red River valley lands in Wichita county by that number, in the absence of proof that there was.

The 28th assignment is as follows:

"The court erred in paragraph 3 of his findings of fact because the evidence is insufficient to support such finding, which paragraph is as follows: 'The court further finds that the plaintiff, M. E. Martin, furnished an abstract of title to the 10 acres of land within the time specified and agreed in the contract; that the same was examined by the attorneys of the defendant and objections specified on the 24th day of February, 1919; that the plaintiff cured all the objections within the time allowed him so to do under said contract, and that the title to the lease on said property was good in the plaintiff, M. E. Martin, as was evidenced by the abstract, in compliance with said contract.' "

The grounds of objection, as evidenced by the proposition, seem to be because the abstract itself was not offered in evidence, and that the record therefore fails to show that the defendant complied with the contract. The opinion of plaintiff's attorney could not be substituted for the abstract; that it was not brought down to date; that the instruments called for in the opinion were not actually placed in the abstract, and that the contract did not require defendant to cure the defects; that the abstract was to be approved by the attorneys of plaintiff, which they never did.

The plaintiffs, in their answer, pleaded there was an abstract presented to their attorneys within the time limit; that it showed certain defects; that it was not brought down to date; that the land was incumbered; that the lease was transferred to the Godley Oil & Gas Company, and a dry hole was on the 30 acres, and under the terms of the lease it became void; there was no transfer from the Godley Oil & Gas Company to Martin. The record shows the incumbrance was removed and a release was obtained and filed for record. The assignment to Martin was obtained and recorded. A confirmation deed was obtained from the original lessor, showing fully that the rents were paid, and that the lease was not forfeited, but valid and duly recorded, and the other objections were met and corrected and duly recorded, but were not abstracted and put into the abstract, but certified copies were attached thereto and presented to the attorneys for plaintiff. The testimony from Martin, without objection, and others, show that he procured an abstract and brought it down to date, and that he was told by plaintiffs to deliver it to Mr. Bullington, who was the attorney for Long and McCullough, and he did deliver it to Bullington just a day or two after the contract was made, on or about the 12th or 13th of February; that he then went to Dallas and returned about the 26th of February, and received a communication from Dr. Long about the 26th, by letter, dated the 24th, in which the writer stated he herewith handed Martin the objections to the abstract. "You will see from the inclosed opinion that Mr. Bullington is our attorney." The objections were in substance as set out in the answer, and signed by attorneys for plaintiff, and before the 1st of March, within the contract time, the necessary corrections were obtained and recorded. Defendant had certified copies of the corrections made, and attached them to the abstract, and took them to the attorney for approval, and no objection was then raised to the abstract as not showing title, but on the 27th the plaintiffs wrote to Martin from Waco, stating they were induced to execute the contract by reason of material false representations and a concealment of material facts, calling attention to the opinion of their attorneys as showing defendant could not pass title, and therefore declared themselves not to be further bound by the contract, and that they thereby canceled the same, demanding a return of their checks. They also wrote the bank that the contract was canceled by them, and requested a return of their checks.

[13] We think the evidence conclusively shows the abstract was presented within the time to plaintiffs for examination. This the attorneys did, and made certain specific objections. These objections the defendant cured, and had the necessary instruments executed and filed for record, and presented certified copies thereof, attached to the abstract, to plaintiffs' attorney. There was then no objection that this did not cure the defect, theretofore pointed ou. We think from an examination of the objections the instruments in the record justified the trial court in concluding that the defendant in that particular had complied with his obligation to present an abstract showing title. In fact, we do not think the plaintiffs' proposition assails the instruments obtained as being insufficient to meet the objections, but it seems to be the contention that they should have been abstracted and certified by a duly accredited abstractor, and also that the contract requires an abstract in the first instance to satisfy the attorney and made no provisions for correcting same to meet the objections. This, we think, is a strained construction of the contract. The contract clearly implies defects were to be cured if they could be within the time limit. If these corrections were not cured when presented plaintiffs should then have made their objection upon that ground. This they did

not do, evidently concluding the instruments cured by their former objections. As to satisfying objections to title, as shown by abstracts, and when obtaining the necessary instruments to meet defects pointed out and as to whether such would be a substantial compliance with the contract we refer to Stokes v. Waller, 230 S. W. 1085, handed down May 18th, by this court. It was the duty of the plaintiff to point out the errors, and it then became the duty of defendant to cure them, and when he did so, he complied with his part of the contract. No further objection having been urged, the plaintiffs were in default under the contract unless they were relieved by deceit, as charged in their letter of the 27th, and, being in default, this rendered further performance by defendant useless. Lieber v. Nicholson (Com. App.) 206 S. W. 512; Davenport v. Sparkman (Com. App.) 208 S. W. 658; Champion v. Taylor, 229 S. W. 627, decided March 16th by this court.

[14] When the plaintiffs declared their renunciation of the contract the defendant was authorized to accept their renunciation, and was relieved from further performance on his part. Cornelius v. Harris, 163 S. W. 346 (6, 7), and authorities cited.

Assignments 29 to 33, inclusive, call in question the rulings of the court on exceptions to the petition, and the judgment of the court, together with the findings of fact by the trial court. The trial court finds:

"(16) The court further finds that in the Burkburnett oil fields in February, 1919, oil lease values rapidly increased or declined; that the actual damages that would accrue by reason of the breach of this character of contract would be difficult to contemplate and uncertain of ascertainment; that unfavorable reports of and concerning the drilling of oil wells in and near said lease determined the advance or decline of market values.

"(17) The court further finds that the parties to this contract agreed in advance on what would be damages to the plaintiff in the event the defendants should breach said contract, and specified said amount in said contract to be $7,000 if breached within 10 days and $14,000 if breached after 10 days and before its consummation."

[15] These findings are amply supported by the evidence. The defendant sued for the amount as liquidated demand, based on the terms of the contract, and in a supplemental petition, and in reply to the answer of the plaintiffs, set up, owing to conditions existing at the time of the breach, that he had been actually damaged in the sum sued for in the original petition. It is insisted the clause in the contract should be construed as a penalty, and not for liquidated damages. This question has been so frequently discussed that nothing further need

be said by us. Both parties have cited quite a list of authorities. We believe, however, the facts and the pleading bring this case within Collier v. Betterton, 87 Tex. 440, 29 S. W. 467; Durst v. Swift, 11 Tex. 273; Eakin v. Scott, 70 Tex. 442, 7 S. W. 777; Lipscomb v. Fuqua, 103 Tex. 585, 131 S. W. 1061; Davenport v. Sparkman (Com. App.) 208 S. W. 658; Walsh v. Methodist, etc. (Com. App.) 212 S. W. 950; and by this court in cases not yet published. Garrard v. Cantrell, 232 S. W. 911, April 13th; Kollaer v. Puckett, 232 S. W. 914, May 4th. The damage which would be sustained upon breach the evidence shows was necessarily uncertain, in that the operations in that field, discovery or nondiscovery of oil, in paying quantities, in the locality of land, violently affected the market of oil leases. The fact that during the negotiations these things were not spoken of should not affect the express written stipulation that the damages recoverable should be the amount paid on the contract. The parties necessarily must have had in view such contingencies as affected its value. At this time the contract may appear to be a great hardship yet when parties made contracts, speculating upon contingencies, they should not complain that their contracts are construed to fix the damages which the evidence indicates they intended it should do.

We find no reversible error. The judgment is affirmed.