READ v. GIBSON & JOHNSON. (No. 493.)

Court of Civil Appeals of Texas. Eastland. Nov. 9, 1928.

Rehearing Denied Jan. 11, 1929.

Kirby, King & Overshiner, of Abilene, for appellant.

C. G. Whitten and Wagstaff, Harwell, Wagstaff & Douthit, all of Abilene, for appellee.

HICKMAN, C. J. This appeal involves the construction of the following written contract:

"The State of Texas, County of Jones

"This contract and agreement made and entered into by and between H. F. Gibson and F. K. Johnson, hereinafter called 'lessee,' and the other parties whose names are subscribed hereto being called 'lessors,' witnesseth:

"That the undersigned lessors agree to lease and let on what is known as Regular Commercial Producers 88 Special Form five year lease contract for oil and gas the lands mentioned in said lease contracts so as to be as near in a solid block as possible.

"The said lessee agrees to pay $5.00 per acre bonus on said land and $1.00 per acre annual rental according to terms of form 88 Producers Special for said leases during the term of said lease, the $5.00 to be paid to the lessors by lessee as soon as title is completed as hereinafter stated.

"It is understood and agreed that the Abilene State Bank of Abilene, Texas, is to act as escrow agent to handle leases, abstracts and requirements under this contract and the money for the lessors is to be paid by the lessee in said bank to each of the lessors credit according to his respective acreage so leased.

"It is further agreed that the said lessee is to drill a well to a depth of 2,000 feet on said block of land of the grantors unless oil or gas is found in paying quantities at a lesser depth, said well to be drilled at any point he desires on said tract of land, said well to be spudded in within sixty days after titles are made merchantable by the lessors and said well to be completed with due diligence and without unnecessary delay, and drilling of a well on said block of land aforesaid is a part of the essence of this contract.

"It is further agreed and understood and hereby stipulated that the lessors are each to furnish to the lessee an abstract of title showing a good and merchantable title in the lands herein agreed to be leased except such indebtedness as may be outstanding against said lands in vendor's lien notes or deeds of trust; that thirty days shall be allowed for delivery of the abstracts to the lessee for examination; that lessee shall have twenty days after abstracts are furnished to have

same examined. The lessors agree to have their abstracts brought down to date as soon as practicable and turn same over to the lessee for examination. If any defects are found in said abstracts upon examination, then the lessors are to have thirty days after said objèctions, if any, have been made to their respective tracts and presented to them in which to cure such defects and the lessors are to have thirty days after the objections have been presented to them to their respective tracts of land in which to cure the same and in the event either of said lessors shall fail or refuse to cure said objections, then the lessee shall have thirty days to cure the same and charge the amount, not to exceed $50.00, to correct the same, against the amount of lease money against the one failing to correct his title as aforesaid. When the lessee has examined the titles and has been paid for by the said lessee, then each of the abstracts so furnished by lessors to lessee shall be returned to the respective lessors owning the land leased by him to which the abstract relates.

"It is further understood and hereby stipulated that in the event that lessors comply with the terms and conditions of this contract and the lessee fails to comply with the terms and conditions of this contract or any part thereof, then this contract shall become null and void as also the lease so executed by the said lessors and the $5.00 bonus per acre hereinbefore mentioned shall become as a forfeit to the lessors according to their respective acreage and the same shall become liquidated damages to the lessors.

"It is further agreed and hereby stipulated that the bank aforesaid shall be the escrow holder of this contract and he is hereby authorized to receive and receipt for the lessors respective shares of money coming to him and deposit the same in his bank and send the said lessor deposit receipt for same according to the said lessors respective acreage so leased to the lessee.

"The block of land referred to herein to be leased by the lessors to lessee is located and situated partly in Taylor and partly in Jones Counties, Texas, and lessors are the owners thereof as above stated. The subscribers hereto as lessors hereby accept the terms and conditions of the above contract and agree thereto.

"Witness our hands at Abilene, Texas, this the————day of January, A. D. 1927."

The contract was signed by F. K. Johnson and H. F. Gibson as "lessee" and 18 different landowners as "lessors." Opposite the name of each landowner was placed the number of acres of land to be leased by him. One of the landowners whose name was signed to the contract was appellant, W. O. Read, opposite whose name was placed "244 acres." Read instituted suit against appellees for the liquidated damages provided for in the contract, and, from a judgment adverse to him ren-

dered by the court without the aid of a jury, this appeal has been prosecuted.

The trial court heard testimony throwing light upon transactions leading up to the contract, in order to arrive at the intent of the parties. If the contract is unambiguous, the evidence should not have been admitted, and this court should not consider it, even though it is contained in the record. Austin Bros. v. Patton (Tex. Com. App.) 294 S. W. 537.

We rather incline to the view that the contract was unambiguous; but since the provision of the contract with reference to the damages in case of a breach predicates liability only in the event that "lessors" comply with the terms and conditions of the contract, the use of the plural instead of the singular with reference to said provision creates a possible ambiguity. The facts introduced in evidence throw light upon this question and confirm our views as to the intention of the parties as expressed in the contract, and we shall therefore consider the case in the light both of the contract and the evidence.

One of the defenses urged by appellees in the lower court, and insisted upon here, is that the provision for damages should be construed as a penalty rather than liquidated damages. This court considered a very similar question in the case of Williams v. Beasley, 300 S. W. 193 (error refused), and upon the authority of that decision, and the cases therein cited, this defense will not be sustained.

The controlling question in the case is whether the contract is severable or entire. The authorities agree that whether a contract is severable or entire is primarily one of intention to be determined from the language used and the subject-matter of the agreement. Necessarily no certain test of severability can be applied. Each contract must be examined with a view of determining whether the parties contemplated that an action would lie in favor of one who performed his part of the agreement without joining all other parties or showing that each of the parties occupying like position with him had performed his part of the agreement. It therefore becomes our duty to consider the language of this contract in the light of the undisputed facts to determine the intent of the parties.

There was introduced in evidence an agreed statement as to certain undisputed facts. This agreement shows that all of the parties whose names were signed to the contract as lessors duly executed oil and gas leases to the defendants in accordance with the provisions of the contract and deposited same with the escrow bank, which leases covered substantially the amount of acreage set opposite the respective names of the lessors; that each and all of the lessors afterwards furnished to defendants their abstracts of title in accordance with the contract; that plaintiff's abstract and the supplements which he had

prepared showed a good and merchantable title in plaintiff to all the lands described in his petition, aggregating 244.68 acres, except that there was shown outstanding and undivided interest in the oil and gas under one of the tracts in C. W. Logsdon, who, with his wife, joined in the oil and gas lease; that on or about May 17, 1927, defendants refused to take and pay for plaintiff's said lease, assigning as the ground for so refusing that one B. G. Reeves, who was one of the lessors executing the contract, had refused to cure the objections made to his title; that said Reeves refused to go further with the contract and demanded the return of his lease; and that the escrow bank returned said lease to Reeves with defendants' consent prior to May 17, 1927, the date defendants refused to pay plaintiff for his lease.

■ The agreed statement further discloses that the abstracts of title to another tract of land, which was to have been included in the block of acreage, disclosed that the owner had only a life estate in said land with the remainder to his children. Appellees did not assign this latter objection to the title as one of the reasons for refusing to pay appellant for his lease, but interposed that defect in title as one of the defenses in their answer herein. Since this defect in title was known to appellees at the time they refused to accept appellant's lease and pay him therefor, and was not assigned by them as one of the reasons for so refusing, we do not believe that, under the authorities, they should be permitted to rely upon such defense. Porter v. Pittman (Tex. Civ. App.) 241 S. W. 718; Long v. Martin (Tex. Civ. App.) 234 S. W. 91; Ohio & M. R. Co. v. McCarthy, 96 U. S. 258, 24 L. Ed. 693; Ward v. Queen City Fire Ins. Co., 69 Or. 347, 138 P. 1067; Haney v. Hatfield, 241 Pa. 413, 88 A. 680; Banco de Sonora v. Bankers' Mutual Casualty Co. (Iowa) 95 N. W. 232.

■ As above pointed out, the appellees consented for Reeves to withdraw his lease from the escrow agent, and did not undertake to cure the defects pointed out in his title. They cannot, therefore, set up Reeves' conduct as against appellant, because to do so would be permitting them to profit by their own conduct, which was wrongful as to appellant, who did not acquiesce therein, if appellees' contention that appellant owed any duty to correct Reeves' title is correct.

■■ As we view the record, appellees are in the same attitude before this court as if it had been shown that all of the lessors complied in all respects with the several obligations imposed upon them in the contract. But, regardless of this conclusion, was it the intention of the parties to provide that appellant should have an action for his damages upon a showing alone that he complied with the contract, without regard to whether any other lessor complied therewith? We think so. One of the tests of severability fre-

quently applied is whether the consideration is expressly or by necessary implication apportionable. The terms of the contract exclude any idea that any duty rested upon one of the lessors to cure any objection which might be raised to the title of any other lessor. The very wording of the contract discloses that it was contemplated that there might be objections to some of the abstracts, and to meet that situation it was provided that the lessee should have 30 days to cure same and charge the amount not to exceed $50 for correcting same against the one failing to correct his title. When Reeves refused to cure his title, the duty did not devolve upon appellant so to do, but rather upon appellee. The contract disclosed that each signer owned a certain number of acres. Each was to be paid for his acreage at the rate of $5 per acre, the amounts payable to each being dependent upon the number of acres owned by him. The penalty provided in favor of the lessors expressly states same was to be paid "according to their respective acreage." The money was likewise to be credited to the lessors "according to his respective acreage." Appellees, in their dealings with Reeves, put that interpretation upon the contract by consenting to his withdrawal therefrom without consulting the other lessors.

A very significant fact throwing light upon the intention of the parties is contained in the record. It is disclosed that the parties had some difficulty in arriving at the provisions of the contract. The first contract drawn was not acceptable to certain of the lessors, for reasons not here important to state. The lessees then drew a contract containing a provision which was unacceptable to lessors, and the contract executed was one drawn by lessors for the very purpose, it seems to us, among others, of making clear this very obligation. It was provided in the second contract drawn, being the one drawn by lessees, that: "It is further agreed that in the event the title in the opinion of lessee's attorney shall not be good and merchantable as to any of the tracts described in this contract, then, at the option of the lessee, it may either declare this contract null and void or return the oil and gas leases to the person or persons named as one or more of lessors, whose title in the opinion of lessee's attorney is not merchantable and accept delivery from the said Abilene State Bank, of the leases upon which it has approved title, under the terms of this contract, in which latter event it will be bound to drill said well on some part of the property covered by said oil and gas leases, which it accepts."

It will be observed that this provision was materially changed in the contract executed, showing clearly to our minds that the lessors would not agree that lessees could refuse to accept the leases on tracts where abstracts were acceptable on the ground that there were defects in the abstracts to other tracts.

The fact that this right was omitted from the last contract shows that same was considered and agreed upon adversely to the claim of appellees in this suit. Had the lessees desired to be relieved from obligations to one lessor by default of another lessor, as was indicated by the form of the contract drawn by them, they should have preserved that right by having the contract so recite. Since they signed a contract without that provision, it is our opinion that they have bound themselves to pay appellant for his lease, and that by breaching this contract they are liable to him to the amount of $5 per acre as liquidated damages.

The judgment of the trial court will be reversed and here rendered in favor of appellant.

### On Motion for Rehearing.

A few of what we conceive to be the more important arguments in appellees' motion for rehearing will be noticed briefly.

■ It is insisted that we erred in our original opinion in considering any of the evidence heard by the trial court on the issue of the intent of the parties in entering into the contract. That is not the position assumed by appellees in their brief, as we understand it. It was appellant who objected in his brief to any consideration of this evidence, and in resolving the doubt in favor of a consideration thereof we were overruling the objection of appellant, and not of appellees. Appellees had no cross-assignments in their brief. We do not, therefore, think that appellees are in a position to complain on rehearing that we considered this evidence. But, in view of their insistence in their motion, we have again carefully considered this contract, and it is our opinion that, construing same as it is written and as if it contained no ambiguity whatever, we believe the intention of the parties in entering into it was to grant to each landowner a severable cause of action for the specific damages provided therein to accrue to him. In other words, if the contract is unambiguous, which, as stated, we are inclined to believe, then appellant was entitled to maintain this action for his damages; and, if ambiguous, then the evidence heard by the trial court unquestionably establishes this intent.

■ A contract may be severable in part and entire in part. There is no fixed rule of law determining the question of when a contract is entire, and courts will always undertake to determine the real intention of the parties with reference to each of the provisions of the contract considered in connection with the whole. If appellees' contention is correct that, for a breach of this contract in any of its particulars by them, no right of action existed in any one of the lessors unless joined by all, a very unusual and almost impossible contract was signed by these lessors. If the term "lessors" as used in the contract imposed such duty upon each and all of the lessors jointly, then the contract would have to be construed as if each of the lessors contracted to lease each and every tract of land to the lessee; that each lessor was to furnish to the lessee an abstract of title to each and every tract of land included in the block; that each lessor owed the duty of correcting the objections to the title in each abstract; and that each lessor must join with the other lessors in a suit for damages, and, as a condition precedent to recovery in such suit, prove that each and every lessor complied fully with his contract, while, at the same time, the consideration accruing to each was only that proportion of the damages represented by the number of acres furnished by him. Such construction of the instrument would render meaningless other specific provisions thereof. We therefore think that where the contract provides that lessors shall furnish titles and shall comply with the terms of the contract, etc., such provisions must be interpreted in the light of other more specific provisions showing that the duty of each lessor applies only to his specific tract of land, and that the intention of the contract was to give to each lessor his action for damages for a breach thereof without reference to whether the other lessors joined him in the suit.

It is insisted that in determining that the contract was severable we overlooked the principal consideration of the contract, to wit, the drilling of a well on some part of the proposed block. It is argued at great length, and seems to be conceded by appellant, that, as to the provision for drilling a well, the contract was entire. In a limited sense this is true, but not, we think, in the sense insisted upon by appellees. No one of the lessors had the right to insist that the well be placed upon his particular tract of land, but the benefits to be derived by the drilling of the well were individual benefits for the respective lessors, some greater and some less, according to the location made by the lessee of the well. No joint benefits to lessors were contemplated. We agree that, had the contract contained no measure of damages for the failure of the lessee to drill a well, and had the contract been breached only in that particular and a suit filed against the lessee for damages for a breach of that provision of the contract, all the parties to the lease should be made parties to such suit. But that is not the case before us. This contract provides, in substance, that, if the lessee breaches any condition thereof, then the $5 bonus money per acre shall forfeit to the lessors according to their respective acreage. We think that, under the terms of this contract, had the only breach of the contract been the failure on the part of the lessee to drill a well, each lessor would have been entitled to sue for his damages for such breach, and that, in respect to the right of a lessor who had performed to maintain an action for damages against the

lessee, it is immaterial as to which term of the contract was breached by the lessee.

Much stress is placed on the contention that three of the lessors had only life estates in their respective tracts of land. The agreement as to the facts introduced in evidence contains two deeds, one from J. H. Gist to his son, Othello Gist, and another from the said grantor to his daughter, Mrs. Jennie Hill, wife of C. F. Hill. These instruments are not before us for construction to determine the character of estates granted thereby, but we do call attention to the fact that in the deed to Mrs. Hill is contained the right and power to execute any oil and gas mining lease upon the lands, which contract shall remain in full force and effect, according to its terms and not be terminated by her death. The deed to Othello Gist does not contain this provision. If the contract were entire, as insisted by appellees, and it was the duty of appellant to correct all objections made to all titles as a condition precedent to his right to sue, then, under the authorities cited in the original opinion, this particular objection to the title was waived by appellees, because they did not furnish such objection to appellant until same was set up as a defense to this suit.

The motion for rehearing will be overruled.