## CHARLES D. MOORE v. HOLLAND L. ANDERSON.

Where a portion of the deposition of a witness was excluded, but the evidence was only cumulative, and could not have changed the result, the court will not consider whether the evidence was wrongfully or rightfully excluded.

Where the evidence is wholly insufficient to support the verdict, a new trial ought to be granted. (Paschal's Dig., Art 1470, Note 566.)

Whether the sum stipulated to be paid upon breach of an agreement is to be taken as liquidated damages, or as a penalty, will depend upon the intention of the parties, to be ascertained by a just interpretation of the contract.

Damages are given as a compensation or satisfaction for an injury actually received, and they should be commensurate with the injury, neither more nor less.

General damages are such as result necessarily from the injury, and they may be recovered on a general allegation of damages.

Special damages are the natural, but not the necessary, result of the act complained of, and they must be averred and proved.

A contract which gave a locator the right to locate a certificate anywhere in the state, did not oblige him to locate it in any particular county.

Where a party had undertaken to locate a certificate on average land, and had located it and returned the field-notes to the general land office, and the land was not patented only because the certificate was not approved by the court of claims, the only possible measure of damages would have been the difference between the land located and average land. But here, as the locator had done all he had agreed to do, the plaintiff had no cause of action whatever, and the judgment was reversed and the case dismissed.

ERROR from Panola. The case was tried before Hon. CHARLES A. FRAZER, one of the district judges.

The record presented very much of a fact case.

This was an action by defendant in error against plaintiff in error upon the two following instruments in writing, to wit:

"Received, Carthage, June 12; A. D. 1854, of Holland L. Anderson, two certificates, which I am to locate or account for—one the bounty warrant of said Anderson for six hundred and forty acres of land, issued by Ben F. Hill, adjutant general, dated August 20, 1850, No. 217; the other the H-R. of John E. Anderson, both conditional and unconditional, for three hundred and twenty acres of land, issued in Harrison county: unconditional bears date November 22, 1848; the conditional, 6th January, 1842, No. 30.                   CHAS. D. MOORE."

The other instrument is as follows, to wit:

"THE STATE OF TEXAS, ⎫
   "*Panola county.* -  ⎬

"Know all men by these presents, that we, Holland L. Anderson and Charles D. Moore, both of said State and county, have this day entered into the following contract: Charles D. Moore, on his part, promises to locate two land certificates on good average land within the limits of the State of Texas.  Said certificates are dated, one 26th August, 1850, the other, November 20, 1848; one numbered 217, the other 30.  Issued: One issued by Ben H. Hill, the other in Harrison county.  Now I, Charles D. Moore, bind myself in the penal sum of $300, lawful money, if I do not locate the said certificates within twelve months from the date of this agreement; and I, Holland L. Anderson, bind myself in the sum of $600, lawful money, should I fail to, or cause to be, made a good and sufficient title to three hundred and twenty acres of land, held by virtue of said certificate or certificates, to said Moore.

xxx—15.

"In testimony whereof, we hereto set our hands and seal, (scrawl for seal,) this June 12, 1854.

"CHAS. D. MOORE. [L. S.]

"H. L. ANDERSON. [L. S.]

"Witnesses:

   "J. HADLY ANDERSON,

   "JOHN E. ANDERSON."

A breach of said two instruments, construing them as one contract, was alleged by defendant in error; and he averred that plaintiff in error had appropriated both of said certificates to his own use, claimed damages, and prayed for judgment against plaintiff in error for $1,500, the alleged value of said certificates; and also alleged that the $300, the sum in which plaintiff in error bound himself, was liquidated damages, and prayed for judgment for the same, with interest thereon.

Plaintiff in error denied all the allegations of this petition, except the execution and delivery of the contract sued on, and also alleged a full compliance on his part. There was a verdict for plaintiff (defendant in error) for $300 actual damages, one-half of which was remitted upon a motion for a new trial, and the motion then overruled by the court.

The following facts were in evidence on the trial of this case in the court below: Both of the instruments sued on. Unimproved lands in Panola county, in 1854 and 1855, were proved to be worth from 80 cents to $1 per acre. At the time of the trial the same lands were worth $1 50 to $3 per acre. Land certificates at the date of the contract were worth about 40 to 80 cents per acre. At the time of trial lands and land certificates had steadily increased in value; that land and land certificates could have been cashed at any time in Panola county at the price above stated. Lands in Denton county were proved to be worth about the same as in Panola county. Plaintiff also proved that the rate of

interest on money was ten or twelve per cent. from June, 1854, to the date of this trial. Plaintiff below proved that about one month before the commencement of this suit he called on defendant and demanded said certificates, and defendant did not deliver them, because they were in the general land office, having been located on land in Denton county. Defendant proved by White, commissioner of the general land office, that the said two land certificates, with the field-notes, were returned to his office September 17, 1856. The Mississippi and Pacific railroad reservation act was also in evidence, and Presler's map of Texas; and it was proved by one witness that Harrison, Cass, and Panola counties, and all counties west of them, were in said reserve.

The charge of the court was as follows: "Gentlemen of the jury, if you believe from the testimony that the parties to this suit each executed the contract sued on, and purporting to have been signed by them, that under said contract the plaintiff delivered to the defendant the certificates for land therein described, and that the defendant failed within twelve months from the 12th of June, 1854, to locate said certificates on such land as is described in said contract, you will find for the plaintiff such actual damages as he has suffered from the failure of the defendant to locate said certificates as aforesaid; and if, in the failure to do so, there was wantonness or fraud on the part of the defendant, you may find such vindictive damages as you deem proper under the testimony; but you will not, in any event, find more actual damages than the sum of $300, the amount specified in the said agreement. If you find for the plaintiff, you will state in your verdict whether your finding is for actual damages or vindictive damages, or both, stating the amount of each separately, if you find both. If under the foregoing instructions you should not find actual damages for the plaintiff, you will find for the defendant."

Under this charge, and the testimony hereinbefore stated,

the jury returned the following verdict: "We the jury find for the plaintiff $300 actual damages."

There was a point about ruling out portions of the depositions of a witness, but it was scarcely intelligible, and considered immaterial by the Supreme Court. The jury found a verdict for $300; a motion for a new trial was overruled, and a judgment was rendered for the plaintiff. The defendant prosecuted error, and assigned the overruling the motion for a new trial and the overruling the objection to a deposition.

*Charles D. Moore*, for himself, argued upon the facts of the case.

*A. W. De Berry*, for the defendant in error, suggested delay.

COKE, J.—The assignments of error present two questions for revision here:

1. The ruling of the court below, excluding the deposition of the witness Allen, offered by the plaintiff in error.

2. The sufficiency of the evidence to support the verdict.

Whether there was error in the exclusion of the testimony of the witness Allen or not we think is immaterial. This testimony was merely cumulative. The witness White proved satisfactorily the only fact that would have been established by Allen's testimony if admitted, to wit, that the certificates had been located in Denton county, at some time previous to September, 1856, and there was no testimony contradicting it. No injury could have resulted to the plaintiff in error from its exclusion.

With regard to the other question, we are of opinion that the testimony was insufficient to support the verdict, and for this reason that the court erred in overruling the motion for new trial.

This action is brought to recover damages for the alleged breach by defendant below of the contract to locate the

land certificates described in the agreement by the 12th June, 1855. Two grounds of recovery are relied on in the petition: one is, that the "penal sum of $300, in which Moore bound himself in the performance of the contract on his part, was liquidated damages, agreed on by the parties as the amount to be paid by Moore in the event of his failure to perform; and the other is for special damages, alleged to have resulted from said failure. The first ground seems not to have been pressed. There was no evidence extrinsic of the writing itself introduced explanatory of the written contract, or tending to show that the amount named was intended by the parties as fixing the amount of damages in the event of a breach, nor do the terms of the instrument admit of such a construction; but, on the contrary, indicate plainly enough that the amount was fixed as a penalty.

In 2 Greenleaf on Evidence, section 257, it is said: "But whether the sum stipulated to be paid upon breach of the agreement is to be taken as liquidated damages, or only as a penalty, will depend upon the intent of the parties, to be ascertained by a just interpretation of the contract; and here it is to be observed, that the policy of the law does not regard penalties or forfeitures with favor, and equity will relieve against them. And therefore because, by treating the sum as a mere penalty, the case is open to relief in equity, according to the actual damages, the sum will generally be so considered, and the burden of proof will be on him who claims it as liquidated damages to show that it was intended as such by the parties." The court below construed the sum named in the contract to be a penalty intended to secure the amount of damages actually sustained, and, we think, properly.

Damages are given as a compensation or satisfaction for an injury actually received. They should be commensurate with the injury, neither more nor less. (2 Greenl. on Ev., § 253.)

Such damages as necessarily result from the injury are known as general damages, and may be recovered on a general allegation of damage. But when the damages are the natural consequences, but not the necessary result, of the act complained of, they are termed special damages, which the law does not imply, and must be specially alleged, in order to lay a basis for proof and a recovery. Some damages are always presumed to follow the violation of any right or duty, and therefore the party injured is entitled to nominal damages, if none greater are proved. (Hope v. Alley, 9 Tex., 395; Neill v. Newton, 23 Tex., 202; 1 Greenl. on Ev., § 254.)

A basis for the proof and recovery of special damages was sought to be laid in the petition, by alleging that between the date of the contract and the 12th June, 1855, there was a large amount of good average vacant land subject to location in the State of Texas; that the same was then being rapidly located upon; and that, by the 12th June, 1855, nearly all the land of that character had been located, and that since that time it had become impossible to get as good locations as could then have been obtained, and that, by reason of defendant's failure to locate the certificates within the agreed time, plaintiff is damaged, &c. If it were admitted that these allegations do, in the absence of special exceptions, lay a sufficient predicate for the proof and recovery of special damages, they were not sustained on the trial by proof. The substance of the testimony on this subject is, that there was more vacant land in Panola and adjoining counties in 1854 and 1855 than at the date of the trial, and that a good many locations had been made in those counties since 1854. This might well be true, and an abundance of good average vacant land might still be there to locate the certificates on, supposing they had not been located at the time of trial. The testimony was confined to Panola and adjoining counties, whereas the defendant was authorized, by the terms of the contract, to locate

the certificates anywhere in the limits of the state where he could find the character of land named. There is not a particle of proof in the record which negatives the conclusion that as good locations could have been made even in Panola and adjoining counties, at the date of the trial, as could have been made in 1854, and, consequently, no damage is shown to have resulted from a failure to locate by June, 1855. But it is clearly proved that these certificates had been located in Denton county, and, together with the field-notes, had been returned to the general land office previous to September, 1856, and that the patents had not been issued, simply because the commissioner of claims had refused to approve and register the certificates without further proof of their genuineness. This is shown to have been within the knowledge of the plaintiff before he instituted this suit. If his certificates are genuine, the file and survey appropriate the land. If it is good average land, he has all that he contracted for; he has sustained no actual damage. If it is not good average land, upon proper allegation and proof the plaintiff could have recovered, as special damage, a sufficient amount to compensate for the deficiency in quality. This is the measure of damage to which, in the absence of fraud, imposition, or deception, on part of defendant, the plaintiff was entitled.

No actual injury having been proved to have resulted to the plaintiff from the breach of the contract, as to the time within which the locations should have been made, he was entitled to recover only nominal damages in this action. The judgment must, therefore, be reversed. The death of the plaintiff in error, Moore, having been suggested, the suit, on motion of defendant in error, has been abated as to him, and an affirmance of the judgment asked against the sureties on the writ of error bond. A reversal of the judgment discharges these sureties, and thus terminates the existence of the suit. If it were otherwise, the case would

be remanded for further proceedings. As it is, we have no other alternative than to reverse and dismiss.

Judgment reversed, and cause

DISMISSED.