## A. M. Millar v. E. B. Smith.

### Decided March 8, 1902.

1.—Contract—Waiver of Stipulation—Forfeiture.

Where a contract for the sale of cattle contained a stipulation that in order to make it binding each party should deposit a certified check payable to the other as a forfeit, the act of the parties in accepting each the uncertified check of the other as a compliance was a waiver as to the character of the check, and the contract became binding upon the deposit as made.

2.—Same—Venue.

The buyer having refused to receive and pay for the cattle and to pay the forfeit check, and the contract having provided for the payment for the cattle in a certain county, this fixed the venue of the suit by the seller for damages for breach of the contract in such county.

2.—Same—Forfeit as Liquidated Damages.

The provision in the contract for each party to deposit a check for $1000 as a forfeit and "for the faithful performance of this contract," and that if either party failed to comply with his part of the contract, the bank should deliver his check so deposited to the other party, was a stipulation for liquidated damages, although the actionable damages are ascertainable.

4.—New Trial—Absence of Counsel.

See facts under which a new trial, applied for on the ground of absence of defendant and his counsel, was properly denied.

Appeal from San Jacinto. Tried below before Hon. L. B. Hightower.

*S. A. McCall,* for appellant.

*C. B. Martin, F. Campbell,* and *C. W. Robinson,* for appellee.

GILL, Associate Justice.—Appellee, E. B. Smith, brought this suit in the District Court of San Jacinto County to recover of A. M.

Millar, of Runnels County, damages for breach of contract for the sale of cattle. It was alleged, in substance, that appellee in the year 1897 was engaged in raising and buying and selling cattle for profit. That on the 30th of January, 1897, he and the appellant entered into the following written contract:

"This agreement, made and entered into this 30th day of Janua 1897, by and between E. B. Smith, of Shepherd, Texas, and A. M. Millar, of Ballinger, Texas, witnesseth: That the said E. B. Smith in consideration of the agreements on the part of the said Millar, hereinafter named, agrees to and with the said Millar that on the 15th day of next month he will deliver to the said Millar, f. o. b. cars on the Houston East & West Texas Railway, at Richardson's Switch, the following property: Two hundred head of cattle or more, consisting of one and two-year-old heifers, cows, and cows and calves, at the following prices: One-year-old heifers at $6.75; two-year-old heifers at $7.75; cows at $10.75; cows and their calves at $14.

"The said Smith further agrees to and with the said Millar, that on the date of the first general delivery of cattle to be made by the people of Tarkington Prairie, Texas, he will deliver to the said Millar not less than 100 nor more than 500 head of cattle of same description as those hereinbefore mentioned; and the said Millar, in consideration of the aforesaid agreement and premises on the part of said Smith, hereby promises and agrees to and with the said E. B. Smith that he will pay to him at Shepherd, Texas, upon delivery of said cattle, the prices above named for all cattle delivered by said Smith under this contract.

"For the faithful performance of this contract, the said Smith, in order to complete and make the same binding upon his part, hereby agrees to deposit in the Commercial National Bank of Houston, Texas, his check certified by said bank for $1000, payable to the order of Millar as a forfeit. And the said Millar, for a like purpose, agrees to deposit in the above named bank his check certified to by the First National Bank of Ballinger, Texas, for $1000, payable to the order of said Smith; these checks to remain in the hands of said bank till this contract is completed. Upon the fulfillment of same, said checks are to be returned to the makers thereof when so advised jointly by said Smith and Millar. Should there be a failure on the part of either to comply with this contract, then the said bank is to deliver said checks to the party complying herewith, upon satisfactory proof that he is entitled to same.

"Witness our hands this 30th day of January, 1897, at Shepherd, Texas.

(Signed) "E. B. SMITH,
"A. M. MILLAR.

"Witness: J. D. Langham, C. R. Miller."

That in pursuance of the provisions of the contract the appellant gave to appellee his personal check on the First National Bank of Ballinger,

Texas, for $1000, payable on the 15th day of June of that year. That appellee got ready and tendered to appellant 900 head of cattle on the delivery days named in the agreement, but the appellant failed and refused to receive them, whereby actual damages are alleged to have resulted in the sum of about $3000. That thereupon appellee presented to the Ballinger bank the check for payment. That payment was refused and the paper protested at a cost of $3.50. He prays for the actual damages sustained or for $1000 as liquidated damages, as the court may determine.

Defendant answered on November 3, 1897, at the first term of the court after the institution of the suit: (1) By plea of privilege to be sued in Runnels County, the county of his residence. (2) After a general denial, it was averred that the contract, the alleged breach of which constitutes the basis of this suit, was never consummated and never became binding because the certified checks provided for therein were never certified and placed in the bank at Houston as required by the contract.

Appellee answered the plea of privilege by supplemental petition, in which it is averred that if it should be held that the contract is not to be performed in San Jacinto County, nevertheless the appellant waived his plea by invoking the general jurisdiction of the court before action was had on the plea of privilege. Appellee further pleaded that the contract was complete in itself without reference to the provision for the certified checks, which were only intended to operate as a forfeit, and in case either party breached the contract to become a forfeit penal in its nature, and that in so far as the contract provided that the certified checks were to be deposited in order to make the contract complete and binding, etc., the provision was embodied in the writing by mistake, and was not the real agreement of the parties. That in truth and in fact the checks uncertified were drawn and exchanged at the time in satisfaction of that provision of the contract, upon the assurance of mutual friends that each party to the contract was solvent and that a personal check was as good as the money.

The court thereupon heard proof before a jury and instructed a verdict for appellee for $1000 and lawful interest from the date of the breach. From a judgment rendered upon this verdict defendant Millar prosecutes this appeal.

The undisputed facts are as follows: The contract in question was executed as alleged on the date indicated. Each party thereto thereupon gave to the other his personal check for $1000, payable on June 15, 1897. This was in lieu of the previous proposition to put up certified checks, the parties being assured that each was solvent. The check described in plaintiff's pleading is the one given him by Millar. In pursuance of the terms of the contract Smith prepared for delivery and offered to deliver the cattle contracted for, and Millar refused to accept them.

Upon the question whether the provision in the contract that the

checks be put up to complete the contract and make it binding was inserted by mistake, the evidence may be said to be conflicting.

It was also made to appear without dispute that plaintiff had suffered damage in the sum of about $3000, but about $2500 of this is an item of such a nature as to render it very doubtful whether it should in any event be recovered.

The principal matters complained of by the assignments presented in the brief are: (1) The failure of the trial court to sustain the plea of privilege. (2) The assumption by the trial court that the contract in question was consummated and binding. (3) The charge to the jury in which it is held to provide for damages in a liquidated sum; and (4) the refusal of the court to grant the motion for new trial.

The plea of privilege was based upon the contention that no written contract had been executed performable in the county of the forum. Inasmuch as the contract, if executed at all, fixed the venue in San Jacinto County, we will dispose of this and the second objection together.

The only reason given by appellant for his contention that the contract did not become binding is that the checks were never certified and deposited in the bank as provided for therein. That the personal uncertified checks were put up or exchanged at the time is not questioned.

It seems perfectly plain to us that the acts of the parties in accepting each the uncertified checks of the other as a compliance with the agreement was a waiver to that extent of the provision that the contract should not be binding until the certified checks were placed, and rendered a further or fuller performance of that requirement unnecessary. It thus becomes immaterial whether the provision was inserted by mistake or not. The remaining provisions of the contract were unimpaired and binding upon each party. This being true, the contract having reached the point that it became of binding force, its provisions as to the place of performance, viz., Shepherd, Texas (which is shown to be a station in San Jacinto County), fixed the venue in that county beyond question.

This brings us to a consideration of what we regard the controlling question in the case. The trial court assumed in his charge that the contract provided for liquidated damages and instructed a verdict upon that theory. We do not propose to review the authorities upon the question. Any judge who undertakes to do so must hold himself ready to write a book of considerable proportions and to reach rather hazy conclusions as to their general import. We shall be content to determine the question in the light of the decision in Eakin v. Scott, 70 Texas, 442. In the case cited the first promissory note given as part payment of the purchase money for cattle contained a provision that the sum for which the note was given should act as a forfeiture in the event the purchaser should abandon the trade. The contract of sale contained a like stipulation. The buyer failed to take the cattle, but

it was agreed upon the trial that the seller sustained no damage by reason of the breach. On this state of the contract and the facts the provision was held to fix the sum named as liquidated damages recoverable without reference to the actual damages sustained.

Here the provision is that each party shall put up a check for $1000. One purpose is to insure the faithful performance of the contract and to make it binding. But another purpose is made equally plain by another provision. The last clause in the contract is to the following effect: "Should there be a failure on the part of either to comply with this contract, then the said bank is to deliver said checks to the party complying herewith upon satisfactory proof that he is entitled to same." That the parties had a right to so contract can not be questioned. If the last clause stood alone it would appear with reasonable certainty that their purpose was that in case of a breach the surrender of the checks by the bank should end the controversy. That $1000 was agreed upon as the cost of a breach. What is there, then, either in the facts or any other provision in the contract, which is inconsistent with this conclusion? The use of the word "forfeit" is not, for in the case cited and in many authorities it is held to be immaterial that the word is used if the meaning is otherwise clear. That the checks were intended to insure the faithful performance of the contract is not necessarily inconsistent with the idea of liquidated damages, for the reason that whether the provision be held a penalty or liquidated damages it was equally intended to coerce performance.

So we conclude that while the checks were intended "to secure the faithful performance of the contract" and "to make same complete and binding" (the parties being strangers and being each at first unwilling to proceed on the bare responsibility of the other), their minds met nevertheless in the purpose that the $1000 check should be surrendered by the bank in settlement of their differences, in the event of a breach. Is there anything in the facts which should incline us to a contrary conclusion? One thing to be considered in determining the nature of these provisions is the character of the contract with reference to the certainty with which damages may be ascertained in the event of a breach. If the measure of damage is certain and the sum easily ascertained, the tendency of the courts is to treat the provision as a penalty and allow only actual damages for the breach. Ordinarily the law supplies a simple rule for the measure of damages in case of breach of contract for the sale of cattle. That is the difference between the market value and the contract price. But here the seller had the right in the one case to furnish an indefinite number of cattle not less than 200, and on the second delivery day furnish from 200 to 400. It does not appear from the contract that he had the cattle on hand. The agreement was for future delivery in two installments. If Millar had on the day following declined to be bound by the contract, Smith's damages might have been slight or nothing. It is by no means certain they could be ascertained by the rule stated above. If he had prepared for delivery

the full number of cattle which under the contract he had the right to furnish and the agreement had been breached by Millar on delivery day, the measure of damages would have been the simple rule stated in case there was a market for the cattle at that point. So the contract may fairly be said to come within the class in which the courts are inclined to uphold a provision fixing the sum to be forfeited in case of breach. The assignment is without merit.

Motion for new trial was filed on May 1, 1901, in which appellant averred meritorious defenses and sought to excuse his failure to be present at the trial in person or by attorney. He did not tender a trial at that term of the court in case the motion was granted. The refusal to grant the motion is assigned as error.

The trial was practically ex parte, the appellant and his counsel being absent. Local counsel was procured through correspondence by telegram and appeared in the case after trial had begun. An offer was made to begin the trial anew for the benefit of appellant's counsel, but a postponement was refused. The trial occurred April 24, 1901. The suit has been pending since 1897. Appellant left the State on business about the beginning of the term of court without making any agreement looking to the setting of the case. His regular counsel failed to attend the court or arrange for the setting of the case, and have shown no good excuse for their failure to do so. We think the appellant was negligent in failing to be present at the trial, and the assignment of error predicated on the refusal of the court to grant a new trial should not be sustained. We do not deem it necessary to state more minutely the facts set up in the motion.

No other assignment requires extended notice. Having found no reversible error in the record, the judgment is affirmed.

*Affirmed.*