COLLINS-DECKER COMPANY v. JOHN P. CRUMPLER.

No. 4213. Decided May 27, 1925.

(272 S. W., 772).

1.—Penalty or Liquidated Damages—Deposit of Check.

On a written agreement for a sale of a stock of goods, price to be ascertained by an invoice, the parties, by verbal agreement, deposited each his check for $1000, to serve as a forfeit and to be surrendered to the other if the drawer failed to comply with the contract of sale. The purchaser having so failed, it is held that he was liable to the seller for the amount of his check, irrespective of proof of damages on the seller's resale of the stock to another. The amount of the check was clearly intended as liquidated damages. (Pp. 530-533).

2.—Bulk Sales Law—Contract.

A contract for sale of a stock of goods which did not comply with the Bulk Sales Law (Art. 9371, Vernon's Statutes) was not for that reason invalid as between the contracting parties. Only creditors could complain of its violation. (Pp. 533, 534).

Questions certified from the Court of Civil Appeals for the Sixth District, in an appeal from Hunt County.

The Supreme Court referred the questions certified to the Commission of Appeals Section B for its opinion thereon, and here adopt same as their answer to the questions.

*Neyland & Neyland* and *H. L. Carpenter,* for appellants.

In order to entitle a seller of merchandise to recover as liquidated damages the full amount of a deposit made by a buyer, it must appear, either: (1) That there is no legal measure of damages for the breach by the buyer and that such damages are uncertain and incapable of ascertainment; or (2) If there is a measure of damages that the parties, at the time of making the contract and the deposit, had made a tentative estimate or calculation of the damages probably to accrue from such a breach, and fixed the amount of the deposit as the approximate or probable amount of such damages; (3) Otherwise stated, where there is a legal measure of damages for the breach and the amount of the damages so measured, as shown by the evidence, in no wise equals or approximates the amount of the deposit, then such deposit will be considered a penalty. Southern Rock Island Plow Company v. Dunlap, 236 S. W. 765.

A sale of stock of merchandise in bulk without complying with articles 3971-3972, Vernon's 1918 Supplement, R. S. where there are existing creditors having debts equal to or exceeding the value of the goods, passes no title to the property, and is in fact no sale; and the purchaser holds the goods in trust for the creditors. (Owosso Carriage Co. v. McIntosh & Warren, (Sup.) 179 S. W., 257.)


*L. A. Clark* and *Harrell & Starnes,* for appellee.

Where a retail merchant contracts to sell his entire stock of merchandise, in bulk, to another and the parties reduce the contract of sale to writing and the seller and the buyer deposit with a third party their checks for $1000.00 each, with the oral agreement and understanding that in the event either party refuses to carry out the contract, such third party is to deliver both checks to the party who is ready to carry out the contract, the checks constitute stipulated or liquidated damages, especially where under the uncontradicted evidence it appears at the time of making the contract and depositing of said checks the amount of the damages that would result to either party by the breach of the contract could not have been ascertained. Yetter v. Hudson, 57 Texas, 604; Goshorn v. Daniel, 169 S. W., 1071; Millar v. Smith, 67 S. W., 429; Reinhardt v. Borders, 184 S. W., 791; Farrar v. Beeman, 63 Texas, 175; Eakin v. Scott, 70 Texas, 442; Collins-Decker Co. v. Crumpler, 242 S. W., 336. The sale is not void as between the parties. The authority cited by appellant, Owolsso Carriage, etc. Co. v. MacIntosh and Warren, was an action by a creditor of the merchant who had sold his stock in bulk and the creditor served a Writ of Garnishment on the purchaser, after the purchaser had resold the stock of goods. The Supreme Court held that, the sale being void for failure to comply with the Bulk Sales Statute,

the plaintiff creditor by its Writ of Garnishment fastened a lien upon the proceeds of the sale of the merchandise.

MR. PRESIDING JUDGE POWELL delivered the opinion of the Commission of Appeals, Section B.

This cause is before the Supreme Court upon the following certificate from the Honorable Court of Civil Appeals of the Sixth District: District:

"The above entitled suit by appellee against appellant was to recover $1000 which appellee claimed he was entitled to as liquidated damages because of a breach by appellant (as found by the jury) of a contract between them as follows:

'Greenville, Texas, February 12, 1920.

" 'This agreement made this the 12th day of February, 1920, by and between Jno. P. Crumpler, of Greenville, Texas, and The Collins-Decker Company, of Greenville, Texas, to-wit:

" 'Jno. P. Crumpler has this day sold to The Collins-Decker Company his stock of pianos, sheet music, talking machines and records, record cabinets and player rolls and all musical merchandize on the following terms:—

" 'Twelve straight second-hand pianos at One Hundred Dollars each ($100.00); One electrical piano for One-Hundred-Fifty Dollars ($150.00) said electrical piano to be in good playing condition; also one studio model Auto Player for the sum of Two-Hundred Dollars ($200.00); All talking machines at wholesale cost; also all sheet music, phonograph records, Player rolls and music cabinets and small goods at wholesale cost.

" 'It is agreed herein by and between both parties that Jno. P. Crumpler will discontinue any further piano business or talking machine business in Greenville or Hunt County, for the consideration of this contract.

" 'It is agreed by and between both parties that The Collins-Decker Company will upon completion of the inventory pay to Jno. P. Crumpler cash in full.

                (SIGNED)        Jno. P. Crumpler
                                The Collins-Decker (Co.)
                                By J. L. Collins.

Witness
_____

_____

" 'All talking machines, records and player rolls to be forty per cent. off list last Sept. Said J. P. Crumpler is to retain the two desks, typewriter and adding machine.'

"The breach of the contract by appellant consisted of its refusal to take and pay for the goods.

"It appeared from the testimony (1) that after the parties executed the contract appellant, in conformity to 'a verbal agreement it had with appellee, deposited its check for $1000 with one James, and that appellee, in conformity to said verbal agreement, deposited his check for a like amount with said James; (2) that at the time appellee deposited his check as stated same would not have been paid had it been presented to the bank he drew it on, because he did not have money with it sufficient for the purpose; (3) that appellee, though solvent at the time he contracted to sell the goods to appellant, was indebted to various persons on account of the goods in sums aggregating more than their value, which was between $7000 and $8000; (4) that none of the requirements of the 'Bulk Sales Law' (Art. 3971, Vernon's Statutes), if it applied to the transaction, were complied with; and (5) that appellant did not know when it agreed to purchase the goods that appellee owed for same as stated, and did no know at the time it made the agreement and deposited its check with James as stated that appellee did not have money in the bank sufficient to pay the check he deposited with James. The testimony indicated that the prices agreed upon for articles specified in the written contract represented the cash market value of the articles and that the market value of the articles not so specified was their cost price. It appeared that appellant was appellee's only competitor in business in Greenville, and that pending the negotiations between them appellee gave appellant his cost mark and that they together made an inventory of the stock of goods. Appellee sold the goods to other parties within sixty days after appellant refused to take them. He testified that the fact that appellant had obtained his cost mark and acted with him in making an inventory of the stock of goods 'would damage' him, but it did not appear from his testimony that he sold the goods for less than the sum appellant contracted to pay him, nor that he was in fact damaged in any way by the failure of appellant to take the goods.

"With reference to the verbal agreement referred to above the witness Collins, appellant's president, who, with the witness Decker, its secretary, acted for appellant, testified:

" 'He (Crumpler) said, 'I tell you fellows I want you to put up a forfeit on this,' and I said, 'all right,' and asked him 'how much,' and he said 'a thousand dollars each,' and I told him 'all right, that would be satisfactory,' . . . . . We put up the checks at the bank with Mr. James with the understanding that if we did not buy the property Mr. James was to deliver the checks to Mr. Crumpler, and if he failed to deliver the property to us we would take the checks. If we failed to take and pay for the property, he was to take the checks.'

"The witness Decker, above referred to, testified:

" 'At the time the contract was signed, or immediately after, there was something said about a forfeit. Mr. Crumpler raised the ques-

tion of the forfeit. He said he wanted a forfeit put up, and Mr. Collins said that was all right. The amount was then agreed on, one thousand dollars.'

"Appellee Crumpler testified:

" 'We agreed to put up a forfeit, a check of $1000 each with W. H. James, Cashier of the Commercial National Bank. . . . . As to who made the suggestion that the checks for $1000 be put up to bind the trade, I don't know but what I did. . . . . . The agreement was that if either party failed to comply with the contract, the checks were to be delivered to the other party. . . . . Question: 'It did not matter how much you were damaged or whether you were damaged at all, if either one broke the contract the other was to take the $1000?'

Answer: 'Yes, sir.'

"Appellant insisted in the court below, and insists here, that on the facts and testimony stated it was not liable to appellee for damages in any sum, and it further insisted and insists, contrary to the holding of the trial court, that if it was liable to appellee at all it was only for the actual damages, if any, he suffered, and not for the amount of the $1000.00 check, because same was a penalty and not liquidated damages. The verdict and judgment were in appellee's favor for the $1000 as liquidated damages. This court was of the opinion that the $1000 represented by the checks was instead a penalty, and reversed the judgment in appellee's favor and rendered judgment that he take nothing by his suit.

"The cause is still pending before us on a motion by appellee for a rehearing; and because we deem it advisable to do so (Article 1619, Vernon's Statutes), we hereby certify to you for decision questions as follows:

"Did this court err in holding on the facts stated that the $1000 represented by the checks of the parties was a penalty and not liquidated damages? (See Elkin v. Scott, 70 Texas, 442, 7 S. W., 777; Collier v. Betterton, 87 Texas, 440, 29 S. W., 467; Cowart v. Connally, 108 S. W., 973; Dilley v. Wise, 160 S. W., 985; and Millar v. Smith, 28 Texas Civ. App., 356, 67 S. W., 429).

"If the foregoing question should be answered in the affirmative, then:

"2. Was the contract for the sale of the stock of goods void because the parties failed to comply with the requirements of the 'Bulk Sales Law,' Article 9371, Vernon's Statutes?"

Two of the cases to which we are referred by the Court of Civil Appeals are by our Supreme Court and each opinion was written by Judge Gaines. In the case of Eakin v. Scott, 70 Texas, 442, a note for $8000.00 was given in part payment upon the purchase of cattle. It was also stipulated in the note that if the buyer failed to take the cattle, said note should "act as a forfeiture and be forfeited." Eakin

failed to execute his contract and Scott recovered the $8000.00  Our Supreme Court, under the facts of that particular case, affirmed the judgment of the lower court.  In doing so, Judge Gaines wrote in part as follows:

"The correctness of the judgment depends upon the question whether the stipulation for the forfeiture of the eight thousand dollar note is to be treated as an agreement for liquidated damages, or as a mere penalty to recover such damages as the plaintiffs should actually sustain.  The questions presented by this class of contracts are a fruitful source of litigation, and are usually difficult to be determined.  Stipulations for liquidated damages are generally for amounts in excess of the actual damages, and in such cases work a hardship upon the parties in default.  In consequence the courts strongly incline to treat all agreements to pay a lump sum, in case of the failure to perform the terms of a contract, as a mere penalty, and in all doubtful instances to allow a recovery only for the actual damages. · This is even so when the contract expressly names the sum as 'liquidated damages,' if the damages are such as can be ascertained with reasonable certainty according to the rules of law, and if, from an inspection of the entire instrument, it appears that the sum may have been named as a penalty only.  Still it is generally admitted that a contract for liquidated damages in excess of actual damages is lawful; and that in the construction of these contracts, as in all others, the intention of the parties must govern.  (Yetter v. Hudson, 57 Texas, 604; Durst v. Swift, 11 Texas, 281; Moore v. Anderson, 30 Texas, 230; Perkins v. Lyman, 11 Mass., 76.)"

We think the undisputed facts as stated in the certificate bring this case within the rule laid down by Judge Gaines and just quoted by us.  It was clearly the intention of the parties that this fixed or liquidated amount, represented by the $1000.00 check deposited, should be forfeited in case of a breach of the contract.  In the Eakin v. Scott case, supra, the note sued upon provided that it should ·'act as a forfeiture and be forfeited.''  The testimony of all the parties to this suit shows that the check was to act as a forfeiture and be forfeited should a breach of the contract ensue.  ·The check was to be surrendered to the party not breaching the contract.  These parties have bound themselves by a definite and clear contract and they should be bound thereby.

In view of what we have just said, we recommend that the first question certified be answered in the affirmative.

The applicable portion of the Bulk Sales Law, referred to in the second question certified, reads as follows:

"The sale or transfer in bulk of any part or the whole of a stock of merchandise, or merchandise and the fixtures pertaining to the conducting of said business otherwise than in the ordinary course of trade, and in the regular prosecution of the business of the seller or

transferor, shall be void as against the creditors of the seller or transferor unless the purchaser or transferee demand and receive from the seller or transferor a written list of names and addresses of the creditors of the seller or transferor, with the amount of the indebtedness due or owing to each and certified by the seller or transferor under oath to be a full, accurate and complete list of his creditors, and of his indebtedness; and unless the purchaser or transferee shall at least ten days before taking possession of such merchandise or merchandise and fixtures, or paying therefor, notify personally or by registered mail every creditor whose name and address are stated in said list, or of which he has knowledge, of the proposed sale and of the price, terms and conditions thereof.''

It will be noted that the statute does not render a sale, in violation thereof, void *generally,* but only as to ''creditors of the seller'' under certain conditions. In the absence of a provision in the statute rendering the sale in suit void as between the seller and purchasers themselves, it should not be held void as between those parties except for reasons sufficient under ordinary rules of law laid down by our courts. In this case, there are no allegations of accident, fraud or mistake. The seller was solvent. There is no suggestion that the sale was in fraud of creditors.

In purchasing this stock, the buyers were charged with knowledge of this Bulk Sales Law. Under that law, the first step in its enforcement was to be taken by the purchasers. If they saw fit to make no inquiries along that line or to make no reservations in the contract itself in that connection, it was their own fault. The parties to such a contract, unlike distant creditors protected by the statute, have every opportunity to know about the sale, its terms and all surrounding conditions and circumstances. Thers seems ample reason why the statute limited the voiding features thereof to the creditors of the seller.

This particular question seems new in the Supreme Court itself. We have found no case by that court between the parties to the sale. We have found a very similar fact case by the Court of Civil Appeals at San Antonio. In that case, a thousand dollar forfeit was sustained and an application for writ of error was dismissed by the Supreme Court for want of jurisdiction. We refer to the case of Freedman & Mellinger v. Maier, 238 S. W. R., 1013. In that case, citing abundant authority, the Court of Civil Appeals held:

''The law will permit all lawful contracts to be entered into between parties, notwithstanding the Bulk Sales Law, so long as the rights of creditors, who alone can complain, are not interfered with.''

In view of what we have stated, we recommend that the second question certified be answered in the negative.

The opinion of the Commission of Appeals answering certified questions is adopted and ordered certified to the Court of Civil Appeals.

                    *C. M. Cureton,* Chief Justice.