## HEADRICK et al. v. ROACH.

### No. 1268.

Court of Civil Appeals of Texas. Eastland.

May 4, 1934.

Rehearing Denied June 8, 1934.

Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, for appellants.

Cox & Hayden, of Abilene, for appellee.

HICKMAN, Chief Justice.

Appellants J. R. Headrick and T. J. Donahue sued appellee John S. Roach for damages for an alleged breach of contract, and from a judgment denying them any recovery have perfected an appeal to this court. In their petition they alleged that on or about April 1, 1933, they entered into a contract with appellee whereby they agreed to buy, and he agreed to sell, 100 head of calves at $18.50 per head, making a total consideration of $1,-850; that $300 of the purchase money was paid by them to appellee on that date, and it was agreed that the calves were to be delivered about April 20th, thereafter, f. o. b. cars at Merkel, Tex., at which time they were to pay appellee the balance of the consideration, amounting to $1,550. After pleading this original contract, they pleaded a novation thereof by the following allegations: That a few days prior to April 20th they entered into an agreement with appellee, acting for himself and through his agent, Gaston Brock, looking to a later delivery of said calves, whereby it was agreed they might leave said calves in the pasture where they were then located for an additional 30 days after April 20th, in consideration for which they were to pay appellee pasturage at the rate of 50 cents per head per month, and interest at the rate of 10 per cent. per annum on the balance of the purchase price from April 20th, until paid; that the balance of the consideration of $1,550 would be extended until such time as they saw fit to move said calves within the 30 days' extension period. It is next alleged that, relying upon this new agreement, they left the calves in the pasture and thereafter, on or about May 13, 1933, they called upon appellee for delivery, and tendered him $1,550, the balance of the purchase price, together with the pasturage and interest agreed upon; that, in violation of his contracts and agreements, the appellee failed and refused to deliver said calves to appellants, refused to accept the balance of the purchase price, and refused to permit appellants to move said calves. Follow then the allegations that, on May 13, 1933, when appellants demanded delivery of

said calves and the appellee refused to deliver same, they had increased in price and were well worth $28.50 per head, thereby causing them to suffer damages in the sum of $10 per head, for which damages, together with the sum of $300 theretofore paid by them to appellee as a part of the purchase price, they sued appellee.

The case was submitted to the jury upon special issues, which, together with the answers thereto, were as follows:

"Special Issue No. 1.

"Do you find from a preponderance of the evidence that plaintiffs, or either of them, and Gaston Brock, on or about April 15th, 1933, agreed that the original contract should be extended for thirty days from April 20th, 1933, on condition that plaintiffs pay 50¢ per head per month pasturage and ten percent interest on the balance of the purchase price of the cattle? Answer Yes or No. Answer: No.

"Special Issue No. 2.

"Do you find from a preponderance of the evidence that at the time the $300.00 check was delivered to Brock, that Brock and plaintiffs, or either of them, agreed that the $300.-00 should be forfeited to Roach if plaintiffs failed to carry out their part of the original contract? Answer Yes or No. Answer: Yes.

"Special Issue No. 3.

"What was the reasonable cash market value per head of the one hundred cattle on May 13th, 1933? Answer: $24.00."

The negotiations for the sale of the calves were oral, but, in order to have a written memorandum of the terms thereof, appellants wrote on the back of the $300 check given by them to appellee as a forfeit, or a part of the purchase price, the following language: "This check is given as forfeit on 100 steer and heifer calves; seller to put up 126 head of mixed calves, all of weanable age; buyer to take 100 of his choice at $18.50 per head, f. o. b. cars at Merkel, Texas; delivery to be made April 10th to April 20th at buyer's option." After causing a line to be drawn through the words "weanable age," appellee indorsed his name on the back of the check at the foot of this memorandum, and cashed the check at the bank. This memorandum seems to be regarded by both parties as embodying the real terms of the original agreement. Appellants declared upon an agreement materially modifying the terms of this original one. It was a sharply disputed fact issue as to whether such later contract was ever entered into, and the court sub-

mitted the question to the jury in special issue No. 1, above copied, in answer to which the jury found that same was never entered into. Appellants point out that the issue was immaterial and should be disregarded, because it did not inquire as to whether they made a contract with appellee, but as to whether they made a contract with Gaston Brock, appellee's son-in-law and agent. They testified to having made such a contract with Gaston Brock, and also testified to an agreement with appellee over the telephone concerning the same matter. The testimony was conflicting as to whether the agreement was made with Brock, and also whether such agreement was made with appellee. If appellants were not satisfied with the way the matter was submitted, they should have filed an objection to the court's charge, or, if it is contended that an issue material to their case was omitted, they should have requested the submission thereof. Having failed to do so, we must regard the record before us as determining that no new contract was ever entered into between the parties.

As we interpret appellants' pleading, the only default charged to appellee was in the breach by him of the modified or novated contract, and, since it has been determined that no such contract was ever entered into, it follows that we would not be warranted in rendering a judgment in their favor based upon the conclusion that such contract was entered into.

But if it be conceded that appellants declared upon a breach of the original contract, they have no finding of such fact, and the evidence does not establish that appellee breached same. As we interpret the written memorandum above copied, it was appellee's duty at any time designated by appellants between April 10th and April 20th, to put up 126 head of mixed calves, from which number appellants were to choose 100, after which it was appellee's duty to deliver these 100 on the cars at Merkel. It would be a strange construction of this contract which would require appellee to assume the initiative and deliver 126 calves to Merkel on the last day of the optional period and call upon the appellants to make their selection there. Clearly, appellee did not breach this contract by a failure to put up 100 head of calves on cars at Merkel by April 20th. It was the duty of appellants to select the 100 desired, and appellee owed no duty to deliver until appellants had determined what calves were to be delivered.

The contention that at all events the

appellants should have had judgment for the $300 originally paid by them to appellee cannot be sustained. The jury found, upon sufficient evidence, that the sum of $300 was paid as a forfeit. That being true, and there being no contention that such amount is unreasonable, the appellee, upon appellants' breach, had the right to retain same as liquidated damages, without reference to any actual damages sustained by him. Eakin v. Scott, 70 Tex. 442, 7 S. W. 777; Reinhardt v. Borders (Tex. Civ. App.) 184 S. W. 791; Collins-Decker Co. v. Crumpler, 114 Tex. 528, 272 S. W. 772; Williams v. Beasley (Tex. Civ. App.) 300 S. W. 193; Read v. Gibson & Johnson (Tex. Civ. App.) 12 S.W.(2d) 620.

Affirmed.