## FIDELITY & DEPOSIT CO. OF MARYLAND v. WALKER et al.
### No. 7378.

Circuit Court of Appeals, Fifth Circuit. Jan. 11, 1935.

Rehearing Denied Feb. 28, 1935.

SIBLEY, Circuit Judge, dissenting.

Albert B. Hall, of Dallas, Tex., for appellant.

Benj. L. Bird, of Fort Worth, Tex., for appellees.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellant, co-obligor with McCrory Stores Corporation in a bond contract providing for liquidated damages of $100,000, appeals from a decree condemning it to pay that sum. Under various assignments it makes one point, that the stipulation in the contract sued on for the payment of $100,-000 was a stipulation not for liquidated damages, but for a penalty, and that plaintiff

having made no proof of the actual damage sustained, was not entitled to any recovery on the bond. Appellees insist that the decree should be affirmed without regard to other considerations, because appellant is endeavoring to bring forward for the first time in an appellate court defenses not asserted below. They insist that since the contract provided on its face that the sum stipulated for was liquidated damages, and since on its face it was not oppressive or unfair, it was for defendant, if it desired to show otherwise, to plead and prove that the actual damages were easily ascertainable and greatly disproportionate to the damages naturally flowing from the breach. They argue further, that all questions of pleading aside, the stipulation was a valid one for liquidated damages, and defendant having executed a carefully drawn contract to pay them, must abide the agreement. The facts are short and simple.

Appellees, owners of a building in Fort Worth, on May 8, 1926, rented it to McCrory Stores Corporation for a term beginning January 1, 1929, and ending December 31, 1954. The consideration was $957,500 cash to be paid over the term, with additional cash charges as rent, of the taxes, assessments, dues, impositions, burdens, water rents, and government charges of every nature imposed on, or in respect of, the demised property. Additional rent was also stipulated for in the form of an agreement that the lessee would, on or before January 1, 1931, at its own cost and expense and at its own risk, add to lessors' buildings as they stood at the leasing, improvements costing at least $60,000. On April 2, 1931, the lessee, having theretofore failed to construct the improvements as agreed in the lease, a bond contract was entered into by McCrory as principal and the appellant, Fidelity & Deposit Company of Maryland, as surety. It recited that the lessee having obligated itself to pay cash rentals and other rental charges, and having agreed to erect improvements to the appellees' buildings before January 1, 1931, to cost at least $60,000 and having failed to so erect them, had applied for an extension of time to November 30, 1936. It provided that in consideration of the granting of the extension, the parties agree that at least $60,000 will be expended on improvements of a substantial and permanent nature, and generally as outlined in the agreement, on or before November 30, 1936, and in the meantime all rental charges will be kept paid and all other lease obligations will be performed. It further provided that upon lessee's failure to erect them on or before the date fixed, or its failure in the meantime to pay rentals and perform the lease obligations, "the lessee and the surety company shall become and be bound and obligated unconditionally to pay to lessors the full sum of $100,000, not as a penalty, but as liquidated damages, to compensate the lessors for the damage sustained by them for such default, the amount of damages that would be sustained by lessors for such default being uncertain and difficult of ascertainment, and the parties hereto having agreed upon such sum in advance."

There was a further provision that the payment of the $100,000 agreed upon should relieve the lessee of its obligation to erect the improvements mentioned, but should in no way relieve it of any other obligations and a correlative one, making the whole purpose and intent of the bond to secure their erection by lessee clear, that completion of the improvements as required in the original lease contract on or prior to November 30, 1936, would discharge the liability on the bond. It was proven that the lessee had become insolvent, and been adjudged bankrupt. That the trustee had elected not to take the lease and that rents amounting to $25,000 had accrued, and were remaining unpaid. Plaintiff showed that the Fidelity & Deposit Company had filed a claim in the McCrory bankruptcy, claiming as contingent liabilities of McCrory to it $15,000 on a bond not in suit, and $100,000 on the bond in suit. Plaintiffs also, over the objection that it was immaterial, and tended to vary the written contract, offered oral testimony as to the conditions which had made for stipulating a bond of $100,000 to secure the erection of improvements "to cost at least $60,000." This testimony showed that what the stipulation in the bond was securing was not the payment to lessors of $60,000 with which to erect improvements, but something entirely different; that the burden of making the improvements, if undertaken by the lessors, would, on account of the difficulties attending the making of improvements in an occupied building, result either in imposing upon them very heavy costs, or entail loss of rents by requiring the tenants to vacate. That in short, it would cost the lessors, if they had to make the improvements, not $60,000, but fully $100,000 to do so.

The McCrory Stores Corporation made no contest. The defendant Fidelity Compa-

ny contented itself with pleading generally. It did not at all set up the defense it now undertakes to raise, that the contract called for' a penalty, and not liquidated damages; neither did it offer any evidence on the trial of the case.

The District Judge thought the contract was one for liquidated damages. He found that the actual damage would be greatly in excess of $60,000, the least cost of the improvements the lessee had agreed to make; that the actual amount of damage which would be sustained by the breach was uncertain and incapable of exact ascertainment, and that the amount stipulated did not on its face appear, nor was it shown to be, disproportionate to the damages reasonably to be expected as the consequences of the breach; that the parties had expressly agreed that this amount was inserted as fair compensation and not by way of penalty; and that since on its face and under the evidence it appeared to be fair, defendant should stand by its covenant to pay.

Appellant comes here urging the general rule that, "An undertaking in a penal bond to pay a sum of money as a penalty for nonperformance of the conditions of a bond, is enforceable only to the extent of harm proved to have been suffered by reason of such nonperformance, and in no case for more than the amount named as a penalty with interest." Subsec. 2, § 339, Contracts Restatement; Grand Lodge v. Cleghorn, 20 Tex. Civ. App. 134, 48 S. W. 750. Appellees, not at all disputing the general rule, insist that the bond in question here is not a penal bond, but an enforceable one for the payment of liquidated damages. Contracts Restatement, § 339, Comment, subsec. 2. They insist that in view of the express agreements in the bond that the sum named was not named as a penalty, but to liquidate damages difficult of accurate ascertainment, it was recoverable on its face for the sum named in it, unless defendant, by pleading and proving facts, established that it is a penal bond, and they cite in support as holding just that, Southern Surety Co. v. Petrolia Land Co. (Tex. Civ. App.) 252 S. W. 204. They insist, too, that questions of pleading and burden of proof aside, the stipulation in this case under the modern view entertained in both Texas and federal courts, was for liquidated damages, and recoverable as such. In support of its claim that the bond is a penal one, appellant points to the fact that it stipulates for the payment of $100,000 not only upon the failure to erect the improvements by the date fixed, but upon the breach of any of the subordinate covenants. It points out that the damages from some of these subordinate breaches would be very small, and that none of them would result in damages in any way proportionate to the $100,000 named in the bond. It invokes as applicable here the general rule that where the same measure is stipulated for damages resulting from the breach of many obligations each widely differing in its damaging effects, the bond will be held to be penal and not for liquidated damages, as applicable here. Appellees reply, not so; the contract provided one damage for one breach, $100,000 for the failure of lessee to add improvements costing at least $60,000 to lessors' buildings. The lessee was to have an extension of time to November 1936, to make these improvements, provided that in the meantime it duly and punctually paid the rent and performed the other obligatory covenants of the lease. While it kept and performed the covenants of its lease, the granted extension was to remain in force. When it failed to do so, the extension lapsed, the obligation to erect the improvements went past due, and for its failure to erect them the lessee and the surety company became obligated to pay the $100,000 stipulated 'as the damages. The liquidated damage clause then, they say, was to secure only the building of the improvements, it was not intended to, and did not, make the amount stipulated for payable as damages for breach of a. subordinate clause. Such breaches were to operate only as accelerators, advancing the maturity and breach of the obligation 'to build' the improvements and the payment of the damages stipulated for the breach. Damages to lessors from such breaches were neither included in nor measured by the stipulated sum, that sum standing solely as the measure of the damages for breach of the agreement to build. In support of this position they point to the provision in the bond that the payment of $100,000 would release the lessee from the obligation to build the improvements, but from no others of its contract, and the provision that the erection of the improvements would satisfy the bond. Claiming that the decisions of the Texas courts, because the contract was made and was to be performed here, Mutual Life Ins. Co. of New York v. Johnson, 55 S. Ct. 154, 79 L. Ed. ——, control in determining whether the sum named in the bond was to be regarded as liquidated damages or as a penalty, they cite Eakin v. Scott, 70

Tex. 442, 7 S. W. 777; Collins-Decker Co. v. Crumpler, 114 Tex. 528, 272 S. W. 772; Nelson v. Richardson (Tex. Civ. App.) 299 S. W. 304; Read v. Gibson & Johnson (Tex. Civ. App.) 12 S.W.(2d) 620; Magruder v. Poulton (Tex. Com. App.) 257 S. W. 533; Langever v. R. G. Smith &·Co. (Tex. Com. App.) 278 S. W. 178; Dutton v. Miller (Tex. Civ. App.) 11 S.W.(2d) 551. They say also, however, that the federal courts are as liberal to their claims as are those of Texas. That they, as the Texas courts do, construe these contracts to give effect to their real intent. Sun Printing & Pub. Ass'n v. Moore, 183 U. S. 642, 22 S. Ct. 240, 46 L. Ed. 366; United States v. Bethlehem Steel Co., 205 U. S. 105, 27 S. Ct. 450, 51 L. Ed. 731; Wise v. United States, 249 U. S. 361, 39 S. Ct. 303, 63 L. Ed. 647; In re Outfitters' Operating Realty Co. (C. C. A.) 69 F.(2d) 90, sub nom. Irving Trust Co. v. Perry, 55 S. Ct. 150, 79 L. Ed. ——, Dec. 3, 1934.

We think appellees have the right of it. There can be no doubt that it was competent for the parties to stipulate that the failure to keep the covenants of the lease would abrogate the extension of time to build the improvements and mature the agreement to build them; nor can there be any doubt that the bond was given to insure, and only to insure, the erection of these improvements. It provided that payment of the amount stipulated would release the obligation to build the improvements, and without a doubt it was a valid and enforceable obligation for the $60,000 the lessee had agreed to lay out on them. But this is by no means all. On its face, without the aid of the objected to but·admissible testimony, it was valid for the sum agreed upon. The testimony appellees offered made its validity clearer. Appellant offered nothing to rebut it. It is one thing to agree to pay to lessors $60,000 in money with which they might build improvements onto occupied and tenanted buildings, taking upon themselves the burdens and risks attendant; it is quite another thing for the lessee to agree that it would add at least $60,000 of improvements at its own risk and expense. The damages flowing from the first of these agreements might well be said to be clearly only $60,000; those flowing from the other greatly uncertain, but certainly greatly in excess of the minimum cost of the improvements. Here the lessee agreed to take on the burdens and obligations, the resulting difficulties and losses

of adding these improvements to occupied buildings without deduction for loss of rentals through inconvenience to and disturbance of tenants, and without responsibility on lessors for damages incurred while doing it. The parties clearly understood and appreciated the value to lessors of what lessee was agreeing to do, and that the loss from its failure, though difficult of ascertainment, would be greatly in excess of the sum lessee had agreed to expend. With these matters clearly in mind they definitely agreed upon an extension of time for the lessee to perform its agreement, the conditions of the extension, and how the loss was to be determined and liquidated if the lessee failed. We think that, subjected to the most rigorous rule of construction which may be applied to these clauses in contracts, the sum named here must be held not a penalty, but liquidated damages. But the decisions of the Supreme Court of the United States and of the state of Texas no longer give countenance to the rigorous view at one time generally, and still in some places obtaining, that provisions in bonds or contracts fixing damages for breach of agreements are to be construed as penalties in cases of doubt. They hold that such clauses are construed as other contract clauses, to give effect to the purpose the parties intended. So construed, the clause in question is easily held to be not for a penalty, but for liquidated damages. Especially is this so here because of appellant's failure to plead and prove the existence of facts rebutting those which the parties in their agreement stipulated to be true. If the stipulations were unreasonable, if any of the facts stipulated were not true, appellant should have shown them by pleading and by proof. The decree was right. It is affirmed.

SIBLEY, Circuit Judge (dissenting).

The majority opinion, as it seems to me, wrongly confuses two distinct obligations of the appellant's bond and thereby supports a decree which can rightly be supported by neither. The obligation to make the $60,000 worth of improvements by November 30, 1936, carries a valid liquidation of damages for failure at $100,000 as is shown in the opinion, but that obligation has not yet been breached. The obligation to pay rents, taxes, etc., prior to November 30, 1936, has been breached, and the default is exactly $25,984.25 as found by the decree; but the effort to liquidate damages under this obligation at $100,000 is plainly futile, and the bond itself recognizes it, for it pro-

vides that if the principal of the bond cannot be considered as liquidated damages, the bond shall remain in effect until exhausted by damages for successive defaults. The exact provisions under discussion are as follows:

"(b) That should the Lessee fail to erect the improvements called for in the Lease Contract and hereinabove mentioned, on or before November 30, A. D. 1936, said Lessee and the Surety Company shall thereupon be bound and obligated unconditionally to pay to Lessors at Fort Worth, Texas, the full sum of One Hundred Thousand ($100,000.00) Dollars, not as a penalty but as liquidated damages, to compensate the Lessors for the damages sustained by them for such default, the amount of damages that would be sustained by Lessors for such default being uncertain and difficult of ascertainment and the parties hereto having agreed upon such sum in advance.

"(c) That should the Lessee at any time prior to the completion of the improvements called for herein, and prior to the time payment therefor has been made as required in the original Lease Contract and prior to November 30, A. D. 1936, fail or refuse to pay the rents, taxes and insurance, or keep and perform any of the obligations imposed on it by the terms of said Lease Contract, and should such default continue for thirty days after registered letters are mailed to the Lessee and the Surety Company calling their attention to any such default, said Lessee and the Surety Company shall thereupon be bound and obligated unconditionally to pay to Lessors at Fort Worth, Texas, the full sum of One Hundred Thousand ($100,000.00) Dollars, not as penalty but as liquidated damages to compensate the Lessors for the damages sustained by them for such default, the amount of damages that would be sustained by Lessors for such default being uncertain and difficult of ascertainment and the parties hereto having agreed upon such sum in advance.

"(e) That in any event the total liability hereunder is the sum of One Hundred Thousand ($100,000.00) Dollars, upon the payment of which this Bond shall be of no further force and effect, and that such full sum of One Hundred Thousand ($100,000.00) Dollars shall be due and payable for either of such defaults.

"(f) Should it for any reason be held that the principal of this Bond cannot be considered as liquidated damages, then nevertheless the same shall remain in effect until exhausted, to protect the Lessors as to any and all damages sustained by them for defaults which this Bond secures."

I think it very plain that section (c) goes first into operation for the period prior to November 30, 1936, or until the completion of the improvements, and secures payment of rents, taxes, and insurance during this extension period. Section (b) becomes operative on November 30, 1936, if by that time the improvements have not been made. Each section separately undertakes to liquidate damages for its breach at $100,000. Although the liquidation may be sustained under section (b), it amounts to nothing until section (b) is breached and it is not breached unless and until on November 30, 1936, two years and ten months after the decree, the improvements shall not have been made. That the principal in the bond is in bankruptcy is no breach of section (b). Its existence as a corporation is not ended by bankruptcy and it may yet, aided perhaps by the surety, make the improvements in time, or the surety can go ahead and make them itself. This obligation of the bond simply has not yet been breached.

The obligation to keep rent and taxes paid was breached when the first default in rents occurred. But it seems absurd to me to say that thereupon by virtue of the liquidation agreement in section (c) the principal and surety in the bond owed $100,000 when it is perfectly plain that they owed only the defaulted rent. Rent, taxes, and insurance charges are certain and their amount self-liquidating. The court had no difficulty in this case in fixing exactly what was due. There was not even dispute about it. Under the state and federal authorities cited in the opinion, neither a court of equity nor of law will enforce so unnecessary a liquidation of damages at $100,000 when a certainly ascertainable and much less sum is really due. The agreement is on its face a penalty in spite of the language used. No evidence is necessary to show that it is such. And I think the pleadings are sufficient to raise the question. The complainant alleged a liquidation of the damages at $100,000, and also alleged the exact damages suffered by defaults in rents and taxes. The surety answers that it does not know what rents and taxes are in arrears, but "denies that it is obligated to pay the complainants the sum of $100,000 or any other amount as liquidated damages or otherwise." The trial court, in its fourth con-

clusion of law, finds there was a valid and enforceable agreement for liquidated damages. It thus appears that the validity of the liquidation was challenged by the pleadings and decided by the court.

The decree gives judgment against the lessee for the $25,984.25 actual defaults, adjudges a lien, and orders a sale of assets pledged by the lease to pay it, and provides for a deficiency decree. It also gives an independent judgment for. $100,000 additional against the lessee and the surety company which it says is unsecured. The complainant is thus to be paid for defaults under section (c) and, in addition, the full liquidation of damages under section (b) which has not yet been breached, with interest from March 19, 1933, three years and six months before a breach could occur. It should have been for $25,984.25 and interest against principal and surety on the bond, the proceeds of sale of the pledged property to be credited thereon, and the remainder of the $100,000 stipulated in the bond to stand good for future breaches of it if any.

On Petition for Rehearing.

PER CURIAM.

As neither of the judges who concurred in the judgment of the court in the above numbered and entitled cause is of opinion that the petition for rehearing should be granted, it is ordered that the said petition be, and the same hereby is, denied.